## PANHANDLE & S. F. RY. CO. et al. v. HARP. (No. 1122.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 28, 1917. Rehearing Denied March 28, 1917.)

1. CARRIERS ☞229(1)—INJURY TO STOCK—ELEMENTS OF DAMAGE.

In action against a carrier for injuries to stock shipped, shrinkage, depreciation in market value, and decline of market price during delay were all proper elements of damage.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 930, 963.]

2. CARRIERS ☞230(13)—INJURY TO STOCK—CERTAINTY OF VERDICT.

The fact that a finding of damages for depreciation in market value to cattle shipped over defendant railway did not state that delay caused cattle to become gaunt and jaded did not render verdict uncertain or show recovery was for an item of damages not alleged.

3. APPEAL AND ERROR ☞930(1)—REVIEW — CONSIDERATION OF EVIDENCE AS A WHOLE.

Upon appeal the evidence should be considered as a whole in determining whether a verdict was justified.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3755, 3756, 3758.]

4. CARRIERS ☞230(13)—INJURY TO STOCK—ELEMENTS OF DAMAGE.

In action for damages to shipment of stock, a finding allowing recovery of feed bill incurred because of carrier's delay was proper if sustained by pleadings and proof, although not covered by the charge.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

5. CARRIERS &#9755;213—INJURY TO STOCK—DAMAGES RESULTING FROM SHIPPER'S ACTS.

Where cattle shipped to Kansas City with privilege of Wichita were unloaded at Wichita, at shipper's request, and after 24 hours were reshipped to Kansas City, no recovery against the carrier could be had for delay and shrinkage at Wichita.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 920–922.]

6. TRIAL &#9755;260(1) — REQUEST COVERED BY GENERAL CHARGE.

Where court's general charge sufficiently covered matter of special requests, it was proper to refuse to give requests.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651.]

7. TRIAL &#9755;141 — QUESTION FOR JURY — UNCONTRADICTED EVIDENCE.

In action for injury to shipment of stock, where uncontradicted evidence showed that there was no negligence during part of carriage, it was error to submit that question to the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 336.]

Appeal from Hale County Court; W. B. Lewis, Judge.

Action by Ross Harp against the Panhandle & Santa Fé Railway Company and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Madden, Trulove, Ryburn & Pipkin, of Amarillo, and L. R. Pearson, of Plainview, for appellants. Graham & Graham, of Plainview, and Kimbrough, Underwood & Jackson, of Amarillo, for appellee.

HALL, J. This is a cattle shipping case. The plaintiff's amended original petition alleged that on November 27, 1915, plaintiff delivered to the Panhandle & Santa Fé Railway Company, at Plainview, Tex., 174 head of cattle, to be transported, via that line and its connecting carrier, the Atchison, Topeka & Santa Fé Railway Company, to Kansas City, Mo., with privilege of the Wichita, Kansas market, being billed to Wichita, Kan., and there rebilled to Kansas City; that if the cattle had been transported within a reasonable time they would have arrived at Kansas City early Tuesday morning, November 30, 1915, in good condition and in time to be fed, watered, rested, and placed on the market of that date; that the cattle were not transported with ordinary care, but were negligently and carelessly cared for, roughly handled, and delayed so that they did not reach Kansas City until late in the day of November 30, 1915, and it became necessary to hold them over until the market of the following day, incurring extra feed bills in the sum of $35; that at Wichita the cattle were reloaded into ten cars, which caused them to jolt, become bruised, injuring them, and that the delay caused them to become jaded and gaunt so that on account of their gaunt condition they sold for 20 cents per hundredweight less than they would have sold for on the open market at Kansas City, to plaintiff's damage in the sum of $337.98; that on account of the unreasonable delay they shrank 3,400 pounds more than they would have shrunk, to plaintiff's further damage in the sum of $204; that on 54 head the market declined 25 cents per hundredweight, or 54,330 pounds, and 20 cents per hundredweight on 114,660 pounds for the remaining 116 head, to plaintiff's damage in the sum of $365.07.

By their first amended original answer the defendant carriers, after general and special demurrers and general denial, answered that they fully performed their duty as carriers to transport said shipment with ordinary care and dispatch; that the shipment was in fact transported to Wichita, Kan., where it arrived at 4:35 p. m., November 28, 1915, where it was delivered to Healey Commission Company, to whom consigned, without exception; that plaintiff did not sell the cattle at Wichita, but ordered the shipment out on the evening of November 29th to Kansas City, and defendants exercised ordinary care to transport said shipment to Kansas City with reasonable diligence and dispatch, and delivered the same at the Kansas City Stockyards, on the morning of November 30, 1915, without damage other than that usual and ordinarily incident to their transportation by rail; that the failure of said shipment to reach Kansas City in time for the market of November 30, 1915, was not due to the fault of the carrier, but was due to the negligence of the plaintiff, who knew that to forward said shipment to Kansas City would shrink said cattle; that the shipment did in fact reach Kansas City November 30, 1915, in time for the market of that date and could have been sold but for plaintiff's negligence in holding them over; and that plaintiff's negligence was the proximate cause of the shrinkage and other damages to said cattle.

[1] In stating the issues made by the pleadings to the jury, the court used this language:

"A. In this case, the plaintiff sued the defendant railway companies for alleged damages occasioned by delay in reaching market, and shrinkage and depreciation in market value on account of damaged and gaunt condition of his cattle, also alleging that on account of delays the cattle were compelled to be held over for the market of the next day, which necessitated extra expense for feed, and that on said last-mentioned day the market was less."

Of this statement, appellants in their first assignment of error, complain that the court should not have submitted to the jury the issue of damages for depreciation in value of said cattle, in that such issue is neither raised by the pleadings nor the evidence. No objection is made by appellants to this statement as being an incorrect presentation of the issues, nor do we think it is subject to such objection, since in a condensed form it informs the jury of the contents of plaintiff's petition. The assignment is based up-

on the idea that it is a part of the instructions upon which the jury is authorized to return a verdict. The three grounds of damages claimed by plaintiff are: (a) Shrinkage; (b) depreciation in market value on account of the damaged and gaunt condition of his cattle; and (c) that on account of delay in reaching market the price had declined. These are proper elements of damages. Paragraph 1 of the charge submits the issue of ordinary care and diligence in reaching the market in the usual and ordinary time for such shipments, and paragraph 2 is a general statement of the measure of damages where delay, shrinkage, and depreciation in market value because of delay and the appearance of the cattle is involved. The evidence of the witness Martin shows that the cattle were not badly skinned and bruised, but that their general appearance was jaded and gaunt, and that it affected their market value unfavorably, to the extent of 20 to 25 cents per hundredweight. This, in addition to 20 to 40 pounds shrinkage. That the cattle would have sold for 20 to 25 cents per hundred more on the market of November 30th than they did on the following day.

[2] The verdict of the jury is:

"We, the jury, find for the plaintiff against the defendants, and assess his damages in the sum of $576.98. Items: $204.00 which is six cents on 3,400 pounds shrinkage; $337.98, depreciation in market value on account of delay; $35.00, feed bill; $576.98, total."

We think the finding of $337.90 is for the damages alleged in section 13 of the petition, and because the jury did not add that the delay caused them to become jaded and gaunt does not render the verdict uncertain and show that the recovery is upon an item of damages not alleged. This objection, however, together with the complaint made of that portion of the charge wherein the court states the issues made by the pleadings, will probably not arise upon another trial.

[3] In this connection, appellant contends that, since one witness testified that the cattle brought their market value, the finding on account of depreciation in market value is improper. This evidence must be considered in connection with other evidence which as a whole shows that the cattle brought their market value in the condition in which they arrived at Kansas City. The charge of the court does not authorize a double recovery, and no such verdict was returned.

[4] The charge does not submit to the jury the issue of the feed bill found against appellants; but this finding, if supported by the evidence and authorized by the pleadings, should have been included in the verdict, though not mentioned in the charge. H. & T. C. Railway Company v. Finn, 107 S. W. 100; Texas Railway Co. v. Andrews, 28 Tex. Civ. 477, 67 S. W. 923. There is no evidence to show that the feed was necessary, or that

the price sought to be recovered was reasonable. For this reason the finding by the jury is unsupported by the evidence.

[5] By their eighth assignment the appellants insist that the court should have charged the jury not to find for plaintiffs any damages on account of the delay and shrinkage resulting therefrom while the cattle were in the stockyards at Wichita, Kan., and in refusing appellants' special charge to that effect. We think this assignment should be sustained. It appears that the cattle were shipped to Kansa City with the privilege of Wichita, Kan., market, and at the request of the shipper were unloaded into the pens of the stockyards company at Wichita, where they remained for something near 24 hours. The evidence indicates that while at Wichita the cattle were under the control of a commission company, to which they had been consigned by appellee, and that they were actually handled and reloaded by the stockyards company at that place. If any damages resulted by reason of the 24 hours there and any loss in weight can be attributed to such delay, clearly the carriers should not be charged with the damages incident thereto. So far as the record shows, the verdict of the jury includes all such damages.

[6] The ninth, tenth, and twelfth assignments are based upon the refusal of the trial court to give certain special charges requested by appellants, the effect of which is to place the burden of proving negligence upon appellee. These assignments must be overruled. The court's general charge sufficiently presented the matters embodied in the special charges.

[7] By the eleventh assignment, appellant insists that the undisputed evidence being that there was no negligent handling of said shipment from Wichita, Kan., to Kansas City, Mo., it was error for the court to submit such issue to the jury. Of course, if there was no negligent handling between these points and the undisputed evidence established that fact, the court should not have submitted that matter to the jury, and this assignment is sustained.

Such of the remaining assignments as have not been disposed of by what is said above are all overruled.

For the errors pointed out, the judgment is reversed, and the cause remanded.