LANCASTER et al. v. JOHNSON.[*]
(No. 2243.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 23, 1924. Rehearing Denied Feb. 13, 1924.)

**1. Carriers ⊜213—That shipper requested railroad to unload cattle during transportation held no defense in action for delay.**

In live stock shipper's action for damages caused by delay in shipment, it was no defense that the shipper requested that the cattle be unloaded at a certain point and that the cattle would have arrived at destination within the required time if cattle had not been unloaded at such point, where the cattle were in the hands of the railroad while unloaded and it was the railroad's duty to unload the cattle at such point under the federal Twenty-Eight Hour Law (U. S. Comp. St. §§ 8651–8654) and Vernon's Sayles' Ann. Civ. St. 1914, art. 714, since more than 36 hours had elapsed since they were loaded; the shipper's request in such case being merely a reminder to the railroad of its statutory duty.

**2. Carriers ⊜213—Railroad liable for damages caused by delay at point at which it was required to unload cattle caused by previous delay.**

Where delay in shipment of cattle at a point where the railroad was required to unload the cattle under the federal Twenty-Eight Hour Law (U. S. Comp. St. §§ 8651–8654) and Vernon's Sayles' Ann. Civ. St. 1914, art. 714, was occasioned by the negligent delay at a previous point, the railroad was liable for damages caused by the delay at the point at which it was required to unload the cattle.

**3. Carriers ⊜228(5)—Evidence held to prove negligent delay in shipment of cattle.**

In live stock shipper's action for damage caused by delay in shipment of cattle, evidence *held* to sustain verdict finding that the delay was due to the railroad's negligence.

Appeal from District Court, Terry County; Clark M. Mullican, Judge.

Action by C. K. Johnson against J. L. Lancaster and others, receivers of the Texas & Pacific Railway Company, and others. Judgment for plaintiff, and named defendants appeal. Affirmed.

Madden, Trulove, Ryburn & Pipkin, of Amarillo, Wilson & Douglas, of Lubbock, and R. S. Shapard, of Dallas, for appellants.

G. E. Lockhart, of Tahoka, for appellee.

HALL, C. J. This is an action for damages, brought by appellee Johnson against the Panhandle & Santa Fé Railway Company and the appellants, receivers, in the district

court of Terry county, to recover damages alleged to have resulted by reason of a shipment of cattle from Seagraves, Tex., to Fort Worth, Tex. It is alleged that the shipment, consisting of 11 cars of cattle, was made on September 18, 1920, and that after being delayed and roughly handled at several intermediate points, it arrived at Fort Worth Monday evening, September 20, 1920, at 5:30 p. m., being too late for the market of that day. Plaintiff prays for damages for the shrunken and drawn condition of the cattle and for loss occasioned by decline in the market. Among other defenses, the defendants alleged that the cattle would have reached Fort Worth in time for the market of Monday, September 20th, but for the fact that plaintiff, while attending the cattle en route, requested that they be unloaded for feed and water at Baird, which was done. The principal contentions on this appeal are based upon this special answer. The record shows some delay at Lubbock and Slaton while the Panhandle & Santa Fé Company was handling the shipment, but the finding of the jury is that that company was in no way responsible for the damages. It further appears that the shipment was delayed at Sweetwater after it had been delivered to the agents of the receivers at that point by the Panhandle & Santa Fé employees. This delay, according to the appellees' evidence, was approximately 10 or 12 hours. The shipment left Sweetwater for destination late in the afternoon of September 19th, after having been loaded at Seagraves early in the morning of the 18th. The Texas & Pacific train carrying the shipment reached Baird about 8 or 9 o'clock on the night of the 19th, and appellee admits that he requested that the cattle be unloaded there for feed and water, since it was apparent that they could not reach Fort Worth in time for the market next day.

[1, 2] The first contention is that there was error in the refusal of the court to submit the appellant's special issue numbered A, inquiring whether the cattle would have arrived at Fort Worth but for appellee's request that they be unloaded at Baird. P. & S. F. R. Co. v. Harp (Tex. Civ. App.) 193 S. W. 438, is cited as sustaining this proposition, but in our opinion it is not authority in this case. In that case the cattle were unloaded at Wichita, Kan., by request of the shipper and according to a stipulation in the contract. In this case they were unloaded in compliance with the duty imposed by law. While the cattle in the Harp Case were in Wichita, they were in the hands of a commission company, the agent of the shipper; in this case the cattle were in the hands of the carrier. The evidence shows that they remained at Baird about 18 hours. It is not clear from the record whether the cattle were unloaded at Baird in compliance with the federal Twenty-Eight Hour Law (U. S. Comp. St. §§ 8651–8654) or in deference to

Vernon's Sayles' Ann. Civ. St. 1914, art. 714, and that is immaterial, since it was clearly the duty of the railway company to unload them under either statute, as more than 36 hours had elapsed since they were loaded at Seagraves. To have kept them upon the cars longer would have been negligence per se. The request made by appellee to unload them then must be construed as simply a reminder of the statutory duty imposed upon the company. The evidence shows that with reasonable diligence the shipment might have reached Fort Worth within about 36 hours after leaving Seagraves. If the delay at Baird was occasioned by the negligent delay at Sweetwater, the appellants would be liable for whatever damages resulted while the cattle were in the pens at Baird. T. & P. Ry. Co. v. Youngblood, 62 Tex. Civ. App. 587, 132 S. W. 898; Lay v. C., B. & Q. Ry. Co., 157 Mo. App. 467, 138 S. W. 884. When the appellee proved a delay at Sweetwater which the jury found to be negligent, and by reason of which the cattle could not have reached Fort Worth in time for Monday's market, the appellant was liable for such damages as resulted, including the delay at Baird and the damages accruing there. Because the evidence shows that the delay at Baird would have been avoided by a prompt shipment by appellants from Sweetwater, the case of G. H. & S. A. v. Noelke, 59 Tex. Civ. App. 347, 125 S. W. 969, relied upon by appellants, is not in point.

[3] It is true that the evidence is sharply conflicting upon the issue of delay, and the appellee's testimony as to the time when the shipment reached and left Sweetwater varies considerably from that of the appellant's employees. But plaintiff was with the shipment continuously from Seagraves until it reached Baird, and this conflict has been settled by the verdict of the jury. The jury found that the appellants did not use ordinary care and diligence in transporting the cattle from Sweetwater to Fort Worth; that appellee was not guilty of contributory negligence; that the cattle suffered unusual shrinkage in weight by reason of the appellant's negligence, fixing the amount of shrinkage at 25 pounds per head over and above the usual and ordinary shrinkage incident to a shipment under such conditions. They found that there was decline in the market from Monday until Tuesday, when the cattle were sold, of 25 cents per hundredweight. Upon the issue of rough handling the appellee testified that his cattle reached Sweetwater about 3 o'clock on the morning of September 19th, and after being switched around a good while they were delivered to the Texas & Pacific Railway Company about 6 o'clock a. m., which was about daylight; that several times during the day he asked members of the train crew what time they would leave and if he would have time to get something to eat, and was told on every oc-

casion that they would be ready to leave right away; that he stood around until about 2 o'clock, when his cattle were still being switched; the cattle were shown to have been in a damaged condition when they reached Fort Worth; that "they were in extremely bad shape, skinned all over and bruised." He said that he did not get anything to eat until 2 or 3 o'clock and that the train crew were still working until after 4 o'clock in the evening, when they left about 4:30. His oral testimony, together with other evidence of the skinned, bruised condition of the cattle when they reached Fort Worth, is sufficient to sustain the finding of the jury. Without discussing the numerous propositions, most of which relate to the special defense above stated, suffice it to say that we think the evidence is sufficient to support the verdict upon each issue.

We find no reversible error, and the judgment is affirmed.