FT. WORTH & D. C. RY. CO. v. ATTER-
BERRY. (No. 1085.)

(Court of Civil Appeals of Texas. Amarillo.
Dec. 27, 1916.)

1. CARRIERS ⊂⊃228(4) — CARRIAGE OF LIVE
STOCK—EVIDENCE—ADMISSIBILITY.

In an action against a carrier for damages
from delay in transportation of live stock, a
paragraph of the shipping contract, releasing
the carrier from loss which might be sustained
by reason of delay in transportation by storms
or floods, was properly excluded as immaterial,
since a flood or storm which could not be rea-
sonably anticipated and provided against ex-
cuses the carrier, and a carrier cannot, by con-
tract, limit its liability for negligence.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. § 959; Dec. Dig. ⊂⊃228(4).]

2. CARRIERS ⊂⊃230(8) — CARRIAGE OF LIVE
STOCK—TRIAL—INSTRUCTIONS.

In an action against a carrier for damages
to a shipment of live stock by delay in trans-
portation, an instruction that it was the duty
of the railroad company to build and maintain
its tracks, bridges, and culverts in such a sub-
stantial manner as will withstand such storms,
rains, and floods as an ordinarily prudent per-
son would anticipate, taking into consideration
the condition of the soil, rivers, and climatic
conditions of the country in connection with
such history of the country as might be obtain-
ed by a person of ordinary prudence, although
more specific than necessary, was not error.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. § 961; Dec. Dig. ⊂⊃230(8).]

3. CARRIERS ⊂⊃230(8) — CARRIAGE OF LIVE
STOCK—TRIAL—INSTRUCTIONS.

Where it was clear that the shipment was
received by defendant on June 5th, although
there was evidence that it was not received un-
til June 6th, and the flood causing the delay
occurred on June 6th, an instruction that if de-
fendant received the shipment after it was in
possession of facts which would put it upon
notice or inquiry with reference to conditions
of its bridges and tracks, the jury should find
for plaintiff should not have been given.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. § 961; Dec. Dig. ⊂⊃230(8).]

4. APPEAL AND ERROR ⊂⊃1064(1)—HARMLESS
ERROR—INSTRUCTIONS.

Where plaintiff testified that he did not keep
the hogs in the pen, but herded them on the
prairie for two days and put them back into the
pen at night, and it is shown that there were
other pens, one of which was dry and the oth-
ers contained water and mud to the depth of
two inches, error in instructing the jury with
reference to the duty of the defendant in keep-
ing and maintaining its stock pens in good con-
dition for the detention of stock while await-
ing transportation was not prejudicial.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 4219; Dec. Dig. ⊂⊃1064(1);
Trial, Cent. Dig. §§ 525, 528.]

5. EVIDENCE ⊂⊃5(2) — JUDICIAL NOTICE —
COMMON KNOWLEDGE.

The court could not judicially know, nor
could the jury from common knowledge say,
that mud and water two inches deep was in-
jurious or uncomfortable to hogs during sum-
mer months.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. § 4; Dec. Dig. ⊂⊃5(2).]

6. TRIAL ⊂⊃203(1)—INSTRUCTIONS—ISSUES.

Defendant was entitled to have its defense
that the delay was caused by unprecedented
rainfall and flood on its road presented clearly
without being confused and mixed with other
issues.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 477–479; Dec. Dig. ⊂⊃203(1).]

7. TRIAL ⊂⊃252(12) — INSTRUCTION — EVI
DENCE—DAMAGES.

It was error to submit as an element of
damage items of feed which plaintiff alleged
was purchased en route, where there was no
evidence to show that the whole amount pur-
chased was necessary, or that the price paid
was reasonable.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. § 604; Dec. Dig. ⊂⊃252(12).]

8. TRIAL ⊂⊃252(12)—INSTRUCTIONS—ISSUES.

In an action against a carrier of live stock
for damages caused by delay in transportation,
where it was shown that defendant employed a
man to take care of the stock while unloaded
during a delay, and there was no evidence show-
ing what amount plaintiff expended for labor
to assist him in caring for his stock while un-
loaded, the issue should not have been submit-
ted to the jury.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. § 604; Dec. Dig. ⊂⊃252(12).]

Appeal from Donley County Court; J. C.
Killough, Judge.

Action by P. P. Atterberry against the Ft.
Worth & Denver City Railway Company.
Judgment for plaintiff, and defendant ap-
peals. Reversed and remanded.

Thompson & Barwise, of Ft. Worth, and H.
B. White, of Clarendon, for appellant. A. T.
Cole, of Clarendon, for appellee.

HALL, J. This is an action to recover
damages growing out of a shipment of hogs
from Lelia Lake to Ft. Worth. The sub-
stance of plaintiff's allegation is that, on or
about the 5th day of June, 1915, he delivered
168 head of hogs to the defendant railway
company for transportation from Lelia Lake
to Ft. Worth, whereby it became and was the
duty of the defendant railway company to
transport said hogs between said points ex-
peditiously and deliver them in Ft. Worth
in good condition, reasonable shrinkage ex-
cepted; that the hogs were loaded on the de-
fendant's cars at Lelia Lake at 10 o'clock p.
m. Saturday, June 5, 1915; that 24 hours
was the usual and reasonable running time
in which to transport said hogs, and that
they should have arrived at destination at
10 o'clock p. m. Sunday, June 6th, and if
they had been so transported, they would
have been ready for the market June 7th;
that the shipment was negligently delayed
at Childress from 5 o'clock a. m. Sunday,
June 6th, to 2 o'clock p. m. Wednesday, June
9th, resulting in great loss in weight to said
hogs; that during the delay at Childress
plaintiff unloaded the hogs in the stock pens,
which were full of water and mud and in an
unfit condition in which to keep fat hogs;
that in order to avoid great loss thereby
plaintiff employed a man for four days at
$2 per day, to herd the hogs on the commons,
which services were actually performed,
which were reasonable, just, and necessary;

that he paid said hand $8 for his services, for which he asks judgment; that about 2 o'clock p. m. Wednesday, June 9th, said hogs were loaded out at Childress for Ft. Worth, Tex., but were held up at Wichita Falls, Tex., until 7 o'clock p. m. Thursday, June 10th, during which time appellant failed and refused to provide water for said hogs, which resulted in great loss in weight, and that on account of the delay one hog, weighing 450 pounds, died at Wichita Falls; that said shipment did not reach Ft. Worth until Saturday, June 12th, resulting in shrinkage and loss in weight of 2,620 pounds; that the usual shrinkage is 5 pounds per head, or 840 pounds, making a net loss to appellee of 1,780 pounds, which he alleges to be worth $7.55 per hundred, for which he also asks judgment; that if the hogs had been shipped and delivered in Ft. Worth promptly, they would have sold on the June 7th market, at 15 cents per hundred pounds more than they actually sold for on the 12th, which difference in market value he also sought to recover; that on account of the delay he incurred a general expense bill of $135 for feed for said hogs, which was reasonable, necessary, and just; that the appellants had knowledge of such expense on account of the delay in question, and that the same was necessary; that his personal and necessary expense by reason of delay was $25, which amount he also sought to recover.

After general demurrer and general denial, defendant alleged that it handled the shipment under and by virtue of a special reduced rate written contract, which, among other provisions, specially provided that in consideration of the reduced rate appellant should be relieved from all injury, loss, or damage to said live stock by reason of storms or floods, and by reason of injury to its tracks and yards; that after it received the shipment of hogs at Lelia Lake, and after undertaking the transportation of same to Ft. Worth, a distance of approximately 268 miles, and shortly after departing from Lelia Lake, there came an unprecedented rainfall and flood on its line of road between Vernon, Tex., and Wichita Falls, Tex., which caused the streams known as the Pease river and Wichita river, across which its line of road extended, to greatly overflow their banks and the surrounding country, including the tracks and roadbed of appellant, over and near said streams, injuring and damaging the roadbed, trestles, and bridges, rendering it impossible to operate trains, making it necessary to suspend traffic until the flood receded and its tracks, trestles, and bridges had been repaired; that the bridge across Pease river was partially washed away by the flood prior to the arrival of said shipment of hogs at that point, and after its departure from Lelia Lake, making the delay at Childress unavoidable; that the unprecedented rainfall and consequent rise in the Wichita river at a point near Wichita Falls washed away part of the dump, trestle, and bridge across that river after the acceptance of said shipment, and after the journey to Ft. Worth had commenced; that as soon as the water receded so that repairs could commence, appellant put forth every effort and used every means at its command toward repairing its roadbed, trestles, and bridges, and that it did, in fact as soon as possible, effect said repairs; that prior to said unprecedented rainfall and flood, its roadbed, bridges, and trestles, through the territory mentioned, were good and substantial structures, capable of withstanding all usual and ordinary rainfalls between said points, and that they had been maintained in that condition, for which reason the alleged damages were unavoidable; that during such unavoidable delay appellant gave due care and attention to such shipment, with a view of avoiding injury as far as possible.

A trial resulted in a verdict and judgment in favor of appellee for the sum of $300, with 6 per cent. interest from date thereof, and costs of suit.

[1] The first assignment of error complains of the trial court's action in excluding the fifth paragraph of the shipping contract, which was, in effect, that the plaintiff, in consideration of the reduced rate, assumed and released the carrier from risk, injury, or loss which might be sustained by reason of any delay in the transportation of said live stock by storms or floods. The court did not err in excluding this paragraph of the shipping contract. If the delay was caused by a storm of such extraordinary violence and a flood so unprecedented that railroad engineers of ordinary care and prudence, in the construction of the bridges, culverts, trestles, and dumps, could not reasonably be expected to have anticipated and provided against it, appellant would be excused without regard to this provision of the contract. G., C. & S. F. Ry. Co. v. Gatewood, 79 Tex. 89, 14 S. W. 913, 10 L. R. A. 419; G., C. & S. F. Ry. Co. v. Levi, 76 Tex. 337, 13 S. W. 191, 8 L. R. A. 323, 18 Am. St. Rep. 45. Even though the flood was extraordinary and unusual, if it might have reasonably been anticipated and provided against, the failure to make such provision might be considered by the jury as negligence. G., C. & F. Ry. Co. v. Pomeroy, 67 Tex. 498, 3 S. W. 722; H. & G. N. Ry. Co. v. Parker, 50 Tex. 344. The rule is settled in this state that common carriers cannot, by contract, limit their liability for negligence. Railway Co. v. Maddox, 75 Tex. 300, 12 S. W. 815; Railway Co. v. Harris, 67 Tex. 166, 2 S. W. 574. This clause of the contract was therefore immaterial, and this assignment is overruled.

[2] In the second assignment of error complaint is made of the general charge, wherein the court instructs the jury that it is the duty of a railway company to build, construct, and maintain its tracks, bridges, and culverts in such a substantial manner as

will withstand any such storms, rains, and floods as an ordinarily prudent person would anticipate, taking into consideration the condition of the soil, the rivers, climatic conditions of the country through which the road passes, and that in connection with such history of the country through which said road runs as might be obtained by a person of ordinary prudence and diligence. This charge is somewhat more specific than is indicated in the case of Santa Fé Railway Co. v. Pomeroy, supra; but we are not prepared to say that it is erroneous for such reason.

[3] By its third assignment appellant insists that the court erred in instructing the jury, in effect, that if appellant received the shipment of hogs after it was in possession of such facts as would have put it upon notice or inquiry with reference to the condition of its bridges and tracks, they should find for plaintiff all damages he may have sustained, except they could not find damages on account of decline in market. The contention under this assignment is that, the shipment having been received on the night of June 5th, and the washout having occurred on the afternoon of June 6th, there was no evidence upon which to base such charge. There is some evidence to the effect that the shipment was received by the company on June 6th, but, taking the record as a whole, it is clear that this is a mistake, and that the hogs were actually received by the company on the night of the 5th of June. The date of the receipt of the shipment was not a contested point, and the discrepancy arises by reason of the fact that some of appellant's officials who had no actual knowledge of the true date, and who evidently were misled by information conveyed to them, fixed the date as of June 6th. Upon another trial this question will doubtless be made clear, in which event the fifth paragraph of the charge should not be repeated.

[4, 5] It is insisted under the fourth assignment of error that the court should not have instructed the jury with reference to the duty of the railway company in keeping and maintaining its stock pen in good condition for the detention of stock while awaiting transportation. It is shown that there were several pens at Childress; that the unloading pen was dry on account of having cinders in it, and that the other pens were muddy; that with the exception of the unloading pen the other pens were about two inches deep in water and mud. Appellee testified that he did not keep the hogs in the pens all the time; that he herded them on the prairies two days and put them back in the pens at night. Appellee insists under this assignment that no injury is shown, and we are inclined to the opinion that this contention is correct. The court could not judicially know, nor could the jury from common knowledge say, that mud and water two inches in depth was injurious or even uncomfortable to hogs during the summer months. The nature and well-known habits of these animals would indicate that the reverse of the proposition is true.

[6] By the fifth and eighth assignments of error it is contended that the court erred in charging the jury upon the sole defense urged by appellants that the damages were caused by unprecedented rain and floods, and in confusing with that issue other matters not pertaining thereto, and in refusing appellant's special charge which properly and clearly presented its defense. Reference to the sixth paragraph of the court's charge shows that the jury were instructed:

"If you find and believe from the evidence that the delay in the shipment was caused by unprecedented rainfalls, floods, or high water, within the vicinity where the washouts occurred, if you find there were any, then you will find for the defendant and against the plaintiff for such damages as he may have sustained by reason of the delay in transportation, except such damages as you find he may have sustained under the last preceding paragraph of the following paragraph."

The "last preceding paragraph" submitted the issue of the receipt of the hogs by appellant after it had notice of the fact that the washouts had occurred, and the paragraph following that complained of instructed the jury as to the duty of appellants in providing and maintaining suitable stock pens, and further instructed upon the issue of holding the hogs in the cars an unreasonable length of time without giving plaintiff an opportunity to feed and water them. We think appellant was entitled to have its defense presented fairly, and without being confused and mixed with other issues.

[7, 8] In the seventh paragraph of the general charge the court submitted, as an element of damages, certain items of feed, which appellee claimed to have purchased en route, amounting to $99.60. There is no evidence whatever to show that the whole amount of feed so purchased was necessary, or that the price paid by appellee for it and for which he seeks a recovery was reasonable. This assignment must be sustained. Claim is also made for the amount expended in hiring a man to assist appellee in caring for the hogs while at Childress. Appellee testified that the company employed a man, and no reason is shown for the employment of another to perform the same duty. There is no evidence whatever tending to show what amount, if any, plaintiff expended while at Childress for the hire of such labor to assist in caring for the hogs. This issue should not have been submitted to the jury.

We overrule the remaining assignments, and for the errors indicated the judgment is reversed, and the cause remanded.