KANSAS CITY, M. & O. RY. CO. OF TEXAS v. BOMAR et al. (No. 1409.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 13, 1918. Rehearing Denied Jan. 8, 1919.)

1. TRIAL ☞352(5)—SUBMISSION OF SPECIAL ISSUES—NEGLIGENCE.

In an action for injuries resulting to live stock from delay in loading, where plaintiff relies, both on the negligent condition of a switch preventing loading and the muddy condition of the loading pens as distinct acts of negligence, they require submission as distinct and separate special issues unless the pens' condition is proved merely to show effect of delay.

2. TRIAL ☞352(5)—SPECIAL ISSUES—NEGLIGENCE.

In an action for damages resulting only from delay in loading cattle, requiring them to remain in the carrier's muddy pens, there was no error in not submitting the negligent condition of the pens upon which no independent damage was sought, as special issue where the jury were instructed to determine if such condition caused the delay.

3. CARRIERS ☞229(1)—LIVE STOCK—DELAYED SHIPMENT—ELEMENTS OF DAMAGES.

In an action against a carrier for negligent delay in loading live stock for shipment, the elements of damage would include, both the value of the lost weight and the depreciation in value of the remaining weight.

4. TRIAL ☞350(6)—SPECIAL FINDINGS—LIVE STOCK—REFUSAL.

In an action against a carrier for damages to live stock from negligent delay in loading, it was proper to refuse to require a finding wheth-

er the delay was caused by the weakened condition of defendant's roadbed from excessive rains, since it might be found that, in the exercise of ordinary care, the carrier should have been provided against such rains, and particularly where the jury found the delay was not caused by an unavoidable accident brought about by heavy and excessive rains.

5. TRIAL ☞240—ARGUMENTATIVE INSTRUCTIONS.

In an action for delay in shipment of live stock, where plaintiff relies on negligent condition of switch track preventing loading, an instruction that the degree of diligence required in construction of main track is not same diligence required as to switch track held properly refused as argumentative in form.

6. TRIAL ☞194(1)—INSTRUCTIONS—WEIGHT AND EFFECT OF THE EVIDENCE.

In an action for delay in shipment of live stock, where plaintiff relies on negligent condition of switch track, preventing loading, an instruction that the degree of diligence required in construction of main track is not the diligence required in construction of switch track held properly refused, as on the weight of the evidence.

7. APPEAL AND ERROR ☞1051(1)—HARMLESS ERROR—OPINION EVIDENCE.

Where plaintiff was qualified to testify as an expert upon cattle values, and accompanied his own to market, and the carrier introduced in evidence the daily market report of sales on that date, plaintiff's evidence, if inadmissible to show that his cattle would have been the best in their class on the market of that day but for carrier's delay was harmless where there was other sufficient evidence of value.

Error from District Court, Foard County; J. A. Nabers, Judge.

Suit by E. P. Bomar and another against the Kansas City, Mexico & Orient Railway Company of Texas. Judgment for plaintiffs, and the defendant brings error. Affirmed.

L. W. Allred, of Chillicothe, D. J. Brookreson, of Benjamin, and H. S. Garrett, of San Angelo, for plaintiff in error.

Berry, Stokes & Morgan, of Vernon, for defendants in error.

BOYCE, J. This suit was brought by defendants in error, to recover damages to a shipment of cattle from Crowell, Tex., to Wichita, Kan., over the road of plaintiff in error, the Kansas City, Mexico & Orient Railway Company. Plaintiffs allege that there was a delay of about 24 hours in the loading of their cattle after they had been, under the instructions of the railway company, placed in the stock pens for loading; that such pens were muddy and soft, without facilities for feed and water, and that plaintiffs' cattle sustained damages by reason of such delay, requiring that they stand for a considerable part of the time in such pens;

that the delay was caused by the sinking and spreading of a switch track leading to the stock pens, when it was attempted to be used by the train upon which plaintiffs' cattle were to be loaded; that the bad condition of such switch track and stock pens was due to the negligence of the railway company. The defendant railway company answered that it had used due care in the construction and maintenance of said switch track and stock pens, and that their condition was caused by an unprecedented rain, and that such condition was in no way due to any negligence on its part. A trial before a jury resulted in a judgment for the plaintiffs and this appeal by the defendant railway company. The allegations of the petition are sufficiently supported by the evidence, and the assignments relate to the manner of the submission of the issues and to the introduction of evidence.

[1] The first assignment complains that the submission of the issue of negligence was too general because the court simply required the jury to find whether the defendant was negligent in any of the respects alleged in the petition. The statute requires that when a case is submitted on special issues, such issues "shall be submitted distinctly and separately and without being intermingled with each other so that each issue may be answered by the jury separately." It has been repeatedly held that only ultimate issues should be submitted, and not issues on merely evidentiary facts. But there may be more than one ultimate issue of negligence in the same case if different and separate groups of facts are relied on as constituting separate and distinct acts of negligence for which recovery might be had, independent of the other. The condition of the switch track and that of the stock pens are distinct, and liability for results of negligence in the maintenance of either might exist, independently of the other. As a general rule, we should say that, where these two different conditions are relied on for recovery of damages in the same case, there are two separate and distinct issues of negligence that should be submitted separately. Dallas Hotel Co. v. Fox, 196 S. W. 652; Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a.

[2] We are of the opinion, however, that in the case before us it does not appear probable that any harm has resulted from this method of submission of the issue. Plaintiff's petition shows that the allegations as to the condition of the pens were made more for the purpose of showing the effect of the delay in shipment on the cattle than as affording an independent ground of recovery, and the charge of the court sharply emphasizes this, for following the submission of this issue of negligence issue No. 2 was submitted:

"If you answer 'yes' to the last question, then say whether or not such negligence, if such

there was, proximately caused the delay in the shipment of said cattle."

These issues were followed by issues submitted for the purpose of determining the damages resulting from such delay. The basis of the recovery, therefore, appears to be in the delay with the muddy condition of the pens merely an incident, for which no independent recovery was authorized. The condition of the pens, of course, had nothing to do with the delay. If the delay was negligent the damages suffered by the cattle while being held on account thereof would be recoverable whether or not there was any negligence in respect to the condition of the pens. Under these circumstances we do not think there was any reversible error committed by the court in this matter.

The second assignment and the first proposition under the third assignment present similar objections to the submission of the second issue quoted above, and the third issue, based on these two, and these assignments are overruled for the same reason given in consideration of the first assignment.

[3] It was pleaded, and evidence offered in support thereof, that the delay caused the cattle to lose about 6 per cent. more in weight than they otherwise would have done, and that in addition to the loss in weight, the condition of the cattle was such that they were worth on the market and sold for about one-half cent per pound less than they would have done had they arrived in the condition they would have arrived but for the delay. By the third, fourth, fifth, and eighth assignments it is complained that the jury were not instructed, on the plaintiff in error's request, that recovery could not be had for both the loss in weight and the bad appearance of the cattle, but were required to find whether the negligent delay proximately caused a diminution of the market value of said cattle at Wichita, Kan., "because of their appearance of loss of weight." The value of the cattle on the market at Wichita was fixed by price per hundredweight. If the delay caused a loss in weight and this loss in weight or other conditions resulting from the delay for which defendant was responsible caused the remaining weight, on account of the appearance of the cattle, to be worth less on the market than it otherwise would have been, it seems perfectly obvious that the practical elements of damage would include both the value of the lost weight and the depreciation in value of the remaining weight. P. & S. F. Ry. Co. v. Harp, 193 S. W. 438. We, therefore, overrule these assignments, as well as the eleventh and twelfth assignments, which for the same reasons assert that the verdict of the jury is excessive, in that double damages were allowed.

[4] We do not think there was any error in the refusal of the court to submit the

following issue, requested by plaintiff in error:

"Was the delay in loading and shipping the cattle in controversy out from Crowell caused by the weakened condition of the roadbed of the defendant brought about by reason of excessive rains?"

No judgment could have been rendered on an answer to such issue, because the mere fact that the slipping of the track .was caused by excessive and unusual rain would not necessarily excuse the railway company, as it might reasonably have been found that the railway company, in the exercise of ordinary care, should have taken steps to provide against the effect of such rains. Ft. Worth & Denver City Railway Co. v. Atterberry, 190 S. W. 1133; G., C. & S. F. Ry. Co. v. Pomeroy, 67 Tex. 498, 3 S. W. 722. The defendant had pleaded that the rains were unprecedented, but the evidence was insufficient to support such allegation. The court, at the request of the railway company, did submit the following issue:

"Was the delay at Crowell, in the loading and moving out of the cattle in controversy, caused by an unavoidable acciuent, brought about by heavy and excessive rains?"

To which the jury answered, "No." This was sufficient, we think.

[5, 6] By the ninth assignment the plaintiff in error complains of the refusal of the court to instruct the jury that the degree of diligence required by the railway company in the construction and maintenance of its main line track is not necessarily the same degree of diligence required in the construction and maintenance of the loading switch, as to which it was only required to construct and maintain such switch in such condition as would make it reasonably safe for the purposes for which it was intended to be used, and under such conditions as might be reasonably anticipated. If it be conceded that this charge states a correct proposition of law, it is argumentative in form and on the weight of the evidence, and was properly refused.

[7] By the tenth assignment objection is made to certain testimony given by plaintiff Bomar, to the effect that with a good ordinary run these cattle would have been the best cattle in their class on the market of that day. The objections urged to this evidence are that it is an opinion and conclusion on a question of fact, and that it institutes an inadmissible comparison, and that, even if a comparison was admissible under proper circumstances, it was not so here, because the conditions of shipment were not shown to be the same. The daily market report covering sales of that day on this market had been introduced in evidence by the railway company, which report gave weights and prices per hundredweight of many cattle sales made on that date. The witness Bomar accompanied this shipment, saw his own cattle and the other cattle that were on the market on that date, and no question is made as to his qualification to testify as an expert as to values, etc. The record shows that plaintiff's cattle were sold by the hundredweight on this market, and the daily market reports were doubtless introduced for the purpose of showing the value of plaintiff's cattle by comparison. In view of these facts we are inclined to think that the evidence was admissible for the purpose of showing to what extent the representative sales quoted in the report might be considered as determining the value of the plaintiff's cattle. At any rate, several witnesses testified to the value of plaintiff's cattle in the condition in which they did arrive and in the condition in which they would have arrived but for the delay. So that there is ample testimony as to values to support the verdict of the jury, and we do not think that the admission of this testimony, if it was inadmissible, was harmful.

Affirmed.