**TEXAS & N. O. R. CO. v. STURGEON.**
No. 4289.

Court of Civil Appeals of Texas. El Paso.
April 22, 1943.

Rehearing Denied June 3, 1943.

Kemp, Smith, Goggin & White, of El Paso, and Baker, Botts, Andrews & Wharton, of Houston, for appellant.

Abner S. Lipscomb and W. C. Peticolas, both of El Paso, and Clifton Hildebrand, of Oakland, Cal., for appellee.

PRICE, Chief Justice.

This is an appeal from the District Court, 41st Judicial District, El Paso County, Texas. As plaintiff, in a personal injury action, William Jack Sturgeon recovered against the Texas & New Orleans Railroad Company a judgment in the sum of $20,000. The Railroad Company has perfected an appeal from this judgment.

The parties will be here designated "plaintiff" and "defendant," as they were in the trial court.

The case is governed by the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

Defendant here urges some twenty-six points of error. It is insisted that the two issues of negligence submitted and found in favor of the plaintiff are not sustained by the evidence, and that the court should have instructed a verdict in favor of defendant, or sustained defendant's motion for judgment non obstante veredicto; likewise, that the evidence was insufficient to sustain the finding of the jury as to proximate cause. The other errors assigned are all trial errors relating to the manner of the submission of the cause to the jury, argument of counsel, and certain

questions asked the panel of the jury on the voir dire examination.

Plaintiff was employed by defendant as a switchman. His injuries were received while attempting to get on the front footboard of the tender of a moving engine, moving eastward in the yards of defendant at El Paso. The switching crew were all employees of defendant and consisted of the following persons: Hutcheson, engine foreman; Hobson, long field man; Germany, pin puller; plaintiff, short field man; Butler, engineer; and Mullins, fireman. Hutcheson, Hobson and plaintiff each testified as to the material facts involved.

Just before plaintiff's injury, the engine with the tender had pulled into a water tank for water; Hutcheson, the foreman, received orders to proceed east and couple on to some Pullman cars and take same west to the Union Depot. He signaled the engineer to back the engine east, and while the engine, in response to the signal, was moving east he got on the northern portion of the footboard. This footboard on the tender is in common use. It extends across the rear of the tender and is something like a foot above the rails. The drawbar extends out over the footboard and divides same into two portions.

Defendant had in force and effect at the time plaintiff was injured the following rule: "Not more than two employees are permitted to ride on the leading footboard of the yard engine at any time, and each will take a position near the outer end of the footboard on opposite sides of drawbar."

It might be added that a handhold extended across the end of the tender above the footboard to assist employees in getting on and off the footboard.

Plaintiff testified the accident occurred on March 10, 1941; that he was short field man; just before the accident the engine had come out of the water tank to pick up a couple of coaches to take to the depot; that during the time the engine was stopped Hutcheson was in the yard office; that he, Hobson and Germany during that time were standing by the signal tower and talking; further, that he learned from Germany, the man following the engine, what the movement was to be; that the duty of Hobson, as long field man, was to go down and take the brake off if there happened to be any set; that the short field man's duty was to go down and couple the engine on to the cars and take the place of the man following the engine on the occasion; that usually all the men required to do this work were the short field man and the long field man; that the foreman didn't usually go down in the performance of such work; that in the performance of the work he contemplated riding down on the south portion of the footboard; that is, on the fireman's side; that when he first observed the engine in motion it was some fifty or sixty feet from him; that he walked across to the south side of the track to get on the footboard on the fireman's side; that the fireman's side, that is, the south side, was his proper place to ride; that while the engine was backing toward him he noticed that Hutcheson and Hobson were on the engineer's side of the footboard, Hobson next to the drawbar, Hutcheson on the outside; that there was no one on the fireman's side; that he was standing outside the south rail of the track, the engine was moving at a speed of from one to two miles per hour; as the engine approached he noticed Hutcheson was reading, just about the time he started to get on Hobson moved around the drawbar, and as plaintiff started to get a handhold, Hobson moved his hand across to get a hold too, and that caused plaintiff to fall backwards on the rail; that he was prevented from getting hold of the handhold by Hobson's moving his hand across the grab-iron; that his left foot was crushed so badly they had to amputate it; that it was his duty to be with the engine at all times unless he had duties elsewhere; that on the particular occasion he did not expect that Hutcheson, the foreman, would stay on the footboard; that he didn't know Hobson intended to swing around the drawbar and that Hobson's move in swinging around the drawbar was simultaneous with his seeking to get on the footboard. That Hobson, as the engine approached, was standing next to the drawbar and was facing west with his back toward plaintiff; that at the time he attempted to mount the footboard he did not believe either Hutcheson or Hobson saw him—Hutcheson, because he was reading his orders, and Hobson, because he had his back to him.

Hutcheson testified that while the engine was standing at the water tank he went to the yardmaster's office to get directions for the work to be performed. He was ordered to get three Pullman cars and take same to the depot. To do this it was necessary for the engine to back east, couple on to the cars and return west; that in re-

sponse to his signal the engine started backing east at a slow rate of speed; that he got on the engineer's side of the footboard; that is, the north side; that at such time Hobson was on the south side of the footboard to the left of the drawbar; that he did not know whether Hobson swung around the drawbar from the north to the south, but he was on the south portion of the footboard when he got on the footboard; that there was no rule forbidding a switchman to swing around the drawbar to shift his position on the footboard when the engine was in motion, but it was not customarily done; that at the time he got on the engine Hobson was facing east, and was in his proper position on the south side of the footboard; that he did not expect Sturgeon to make the trip with them; that he saw Sturgeon when he passed in front of him to get on; that he came from the north side of the track; that Sturgeon tried to mount the footboard just on the other side of the drawbar, between where Hobson was standing and the drawbar; there was no necessity for Sturgeon to make the trip; that when Sturgeon tried to get on the footboard he missed the grab-iron and fell; that when Sturgeon started to fall Hobson grabbed at him, and that was the only move he saw Hobson make; that while on the footboard he glanced at the train orders.

Hobson testified that when the train started backing east he was on the north side of the footboard, but as Hutcheson gave the signal to back east and indicated his intention to get on the footboard, he (Hobson) swung around the drawbar to the south side of the footboard; that he faced east and saw plaintiff between the rails, and that plaintiff tried to get on the footboard in the space between witness and the drawbar; that plaintiff stumbled and fell and received his injuries; that he made no movement when he saw plaintiff was about to attempt to get on the footboard; that it was not safe to do so; that when plaintiff stumbled witness tried to grab him with his right hand.

Taking the testimony as a whole it seems clear that just before plaintiff attempted to mount the footboard, Hobson, swung around the drawbar to the south side thereof.

If plaintiff was not to participate in this movement, the only indication thereof to him was the fact that the foreman, Hutcheson, got on the north side of the footboard. According to plaintiff's version,

Hutcheson and Hobson were each on the north portion of the footboard, the south portion, plaintiff's proper position, if he was to participate in the work, was vacant.

Switching operations in a yard entail the necessity of switchmen getting on and off the footboard of the switch-engine while same is in motion. In order to do this with comparative safety, each member of the crew has to regulate his conduct by what he has reason to expect will be the conduct of the other members of the crew. The portion of the rule we have heretofore copied indicates that same was to promote the safety of men getting off and on the footboard and riding thereon; that men getting on and riding on the extremity of the footboard extending over the rail manifestly promotes their safety in the performance of a dangerous work; that each portion of the footboard be occupied by one switchman manifestly is to provide against interference in mounting or getting off.

■ If, as plaintiff says, the south half of the footboard was vacant as same approached him, it was an indication that he could mount thereon with safety  If Hobson and Hutcheson were, as plaintiff testifies, on the northern portion of the footboard, the situation, it is true, was not absolutely clear. They were there in violation of the rule. It was likewise a violation of the rule for plaintiff to get on the footboard under such circumstances. However, he was called upon to make a prompt and instant decision, which he did. It cannot, we think, be held that his act in attempting to mount the footboard at the time he did was the sole proximate cause of his injury.

However, defendant's real contention is that neither Hobson nor Hutcheson had notice, or, in the exercise of ordinary care, should have had notice, that plaintiff might attempt to get on the southerly portion of the footboard.

■ If neither Hobson nor Hutcheson had notice, actual or constructive, that plaintiff might attempt to get on the footboard, then their acts could not constitute negligence in so far as plaintiff was concerned. For practically the same reason, their action in the premises was not the proximate cause of plaintiff's injury. City of Dallas v. Maxwell, Tex.Com.App., 248 S.W. 667; 27 A.L.R. 927.

■ However, it is our opinion that here the question was for the jury. Plain-

tiff, up to the very short time before the accident, had every reason to believe that he was expected to participate in the movement. Hutcheson and Hobson each had reason to anticipate that plaintiff would be in a position suitable to the performance of his work. Each must, we think, be held to the knowledge of the danger to one attempting to get on the south end of the footboard while another switchman was swinging around the drawbar to get on the south portion of the footboard. If plaintiff's testimony is true, and for the purposes of determination of this point it must be taken as true, at the time plaintiff undertook to get on the south half of the footboard, it was unoccupied. To the two employees of defendant other than plaintiff this might have conveyed the information that plaintiff would construe it as an invitation to mount thereon. The engine moved east a very short distance from the time Hutcheson mounted same to the time of the accident. Hobson's move around the drawbar, even though Hutcheson was not on the footboard at the time, was almost simultaneous with plaintiff's attempt to get on.

We hold the issue of negligence as submitted by the court was raised by the evidence. Johnson v. Chicago & E. Ry. Co., 334 Mo. 22, 64 S.W.2d 674.

As has been stated, defendant objected to the submission as made by the court, in that, included therein was not the factual element of notice, actual or constructive, on the part of either Hobson or Hutcheson that plaintiff might attempt to get on the footboard. A special issue was not asked by defendant presenting this issue. Defendant insists that under Rule 279, Texas Rules of Civil Procedure, the request of the special issue was unnecessary to preserve the point on appeal. The position being that the establishment of this factual element of negligence was part of the plaintiff's case. Plaintiff's position is that under Rule 279, before defendant is entitled to complain, it must have presented a special charge on the issue. Further, that in the submission of the fact of proximate cause, in connection with the definition given by the court, there was a submission of this issue. A finding of negligence necessarily comprehended a finding that the employees of defendant should anticipate harm to the plaintiff.

It might be argued, we think, with some plausibility that where a man acts in a manner which is not forbidden by statute, and is excusably ignorant of any harmful tendency of his action, that a jury would not find the action negligent. In short, that the very word "negligence," in its proper sense, conveys the idea of anticipation of harm. In a general sort of way, the issue was likewise submitted in the issue of unavoidable accident.

It is not the general practice, we think, in connection with the issue of negligence to submit an issue or explanatory instruction regarding notice to the defendant of the harmful tendency of his conduct. With some plausibility plaintiff contends that this issue was submitted in the issue as to proximate cause. To the writer, in view of the facts of this case, this contention has strong appeal. However, negligence has to do with the quality of the act or omission in question, while proximate cause deals with the consequence thereof. Northern Texas Traction Co. v. Weed, Tex.Com.App., 300 S.W. 41.

The correct determination of these assignments we think depends on a determination of whether or not it was incumbent upon plaintiff to obtain a specific, affirmative finding on this issue. Under Rule 279, as we construe it the defendant has, by exception to the court's charge, the right to insist that all controlling issues necessary to a recovery by plaintiff be submitted. By controlling issues, we think is meant ultimate issues.

In the case of Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, the Supreme Court, by the way of illustration, outlined the controlling or ultimate issues that are ordinarily presented in an action for personal injuries alleged to have been inflicted by negligence. In this illustration, in the issue of negligence, as a component part thereof, is not set forth the factual element of notice of the harmful tendency of the act or omission in question.

Defendant has cited in support of these points the cases of St. Louis S. W. Ry. Co. v. Lawrence, Tex.Civ.App., 91 S.W.2d 434; Ft. Worth & D. C. Ry. Co. v. Morrow, Tex.Civ.App., 235 S.W. 664; Texas Central R. Co. v. Driver, Tex.Civ.App., 187 S.W. 981; Galveston, H. & S. A. Ry. Co. v. Burr, Tex.Civ.App., 291 S.W. 299; The Fair, Inc., v. Preisach, Tex.Civ.App., 77 S.W.2d 725; Echols v. Duke, Tex.Civ.App., 102 S.W.2d 483, writ dismissed. In nearly all, if not all, of these cases defendant was

sought to be held liable for a condition which did not necessarily arise through its or his negligence.

The duty to exercise care could only arise after notice actual or constructive, of the condition imposing same.

Hutcheson and Hobson, the two employees of defendant involved, had actual notice, in a general sort of way of the position of plaintiff and his relationship to the switching operation. Here, in so far as plaintiff was concerned, the establishment of notice on the part of Hutcheson and Hobson was not a controlling issue. Each might have had notice of the intention of plaintiff to get on the footboard, and still their acts might not have constituted negligence. In fact, the evidence strongly indicates that they had notice he would do so unless their action immediately preceding the injury was interpreted by him as a direction not to do so.

■ Under Rule 279, as we construe it, the duty of the court is to submit all ultimate issues raised by the pleading and the evidence. If in the submission of the issues on behalf of the plaintiff important factual elements of the ultimate issue are omitted, the defendant may present the error by exception to the sufficiency of the issue as formulated to present the ultimate issue. If the court fails in the duty of presenting sufficient definitions or explanations in connection with the issues submitted, in order to complain thereof, appropriate definitions or explanations must be requested. This last requirement, whether such explanations or definitions relate to the plaintiff's case or to a defensive theory tendered by the evidence.

■ In our opinion the two sets of issues complained of comprehended the ultimate issues conditioning the recovery of plaintiff. More specifically, that the two issues as to negligence comprehended the issue of notice to each employee involved in the specific act of negligence submitted. The omitted element complained of by defendant could, we think, have been supplied by an explanation. This explanation the defendant did not tender. It is unnecessary to decide, in view of the pleading here, whether or not, had defendant requested a properly framed special issue, it would have been entitled to the submission thereof. There is authority that it would not.

In the case of Texas Central R. Co. v. Driver, Tex.Civ.App., 187 S.W. 981, there was an issue tendered and refused as to whether the defendant, in the exercise of the degree of care applicable, could have anticipated the action of plaintiff which was the immediate cause of her injury. The case was reversed for the refusal of the charge. In the case of Galveston H. & S. A. Ry., Co. v. Burr, Tex.Civ.App., 291 S.W. 299, the question seems to have been raised by an exception to the court's charge. There was involved a transitory situation, notice of which was necessary to create the duty to take unusual precaution. Here, all the facts and circumstances were known to defendant's employees. We do not think reversible error is presented in this respect.

Defendant excepted to issues numbers one to six on the ground that they failed to submit the issue as to how the injury occurred—failed to submit that the injury occurred in accordance with. plaintiff's theory. The specific objection being that omitted therefrom was the issue as to whether plaintiff sought to get on the footboard from the south side of the track. Plaintiff testified when he sought to get on he was south of the south rail. The testimony of Hobson and Hutcheson contradicted him as to this.

Plaintiff's pleading did not specify from which side of the track he attempted to get on the footboard. In substance he alleged that he was injured while attempting to get on the footboard by specified negligent acts of defendant's employees. There were other grounds alleged, but none were submitted.

■ It is true, we think, the burden was upon plaintiff to show the injury occurred substantially in a manner alleged by him. Galveston, H. & S. A. Ry. Co. v. Washington, 94 Tex. 510, 63 S.W. 534.

■ Here, the gravamen of plaintiff's case was interference with his movement while attempting to get on the footboard; that he was injured while so doing was not an issuable fact. The real issue was, in this respect: Did the act of Hobson directly cause him to fall? This latter issue is directly and pertinently presented by the issue submitted. The testimony of both Hobson and Hutcheson was in substance at the time plaintiff attempted to get on, Hobson was already on the south end of the

footboard. In our opinion the issues were not subject to the objection urged. As a whole the ultimate issues were submitted. The issue as to which side of the track plaintiff attempted to get on from was evidentiary in so far as defendant's negligence was concerned. In connection with the plea of defendant's negligence it was one of the component parts thereof. In this connection it was submitted and found against defendant.

On voir dire examination of the jury panel, one of counsel for plaintiff stated to the panel: "This is not an ordinary damage suit. This case is filed under the provisions of the Federal Employers' Liability Act, and in this case assumed risk and contributory negligence of plaintiff is not available under the law as a defense."

And later the same counsel asked this question of the panel: "Do you have any prejudice against the law which does away with assumed risk and contributory negligence? Under the Federal Employers' Liability Act there is no defense of assumed risk and contributory negligence."

Defendant moved that the panel be discharged and a mistrial be declared. The court overruled the motion and defendant excepted to the ruling.

There seems slight, if any, justification for counsel for plaintiff making any statement relative to the law. An inquiry of prospective jurors as to having prejudice against damage suits in general would have been perhaps proper, but to enter into a discussion of the law relating to the various legal principles governing an ordinary negligence case is unnecessary. Where issues such as limitation are relied upon or something of that sort, an interrogation of prospective jurors relative to being prejudiced as to such issue is perhaps proper. However, on suggestion or request, the trial court would have perhaps instructed the jury to disregard the statements as to the law as made. Defendant did not request this. The remedy sought was a mistrial. Furthermore, we cannot see how in any possible way defendant was injured. The term "assumed risk" was not used in the charge, nor was the phrase "contributory negligence." Fact issues pertinent thereto were submitted. Under the facts presented here we are of the opinion that the statement did not inform the jury of the effect of their findings on the issue it was contemplated would be submitted.

Beyond any question it is true that an employee, under the Act of 1939, 45 U.S.C.A. §§ 51, 54, 56, 60, does not assume the negligent acts or omissions of the employer. It is perhaps true that the idea of assumption of risk has no place in a charge where this Act is involved. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967.

Sundry objections were made by defendant to the opening and closing arguments of the attorneys for the plaintiff. In each case, save one, the objections were overruled, defendant excepting thereto. In the opening argument by plaintiff it was stated: "so, I say, Hutcheson is attempting to reconstruct what he thinks the railroad would like to have him have him seen on that day (meaning the day of the accident)." Upon the court's refusal to instruct the jury to disregard the argument, plaintiff's counsel said: "They don't like this kind of argument. The shoe pinches." On the objection being overruled, counsel continued: "I am just trying to tell you that Hutcheson is an employee of the railroad and has an interest in this lawsuit, and has an interest in keeping his job."

In the opening argument, in referring to Hobson, this was said: "Is Hobson worthy of belief? Would a man who would lie about his name in Phoenix to get a job with the railroad, who would lie about his name in Lordsburg to get a job with the railroad, who would lie about his age in El Paso to keep a job with the railroad, hesitate for one moment to lie on the witness' stand to keep his job with the railroad? That is what he has done in this case, and I am rather surprised that he would go to that length."

In the closing argument, counsel for plaintiff, in discussing why defendant's witnesses should not be believed, said: "They have an interest in keeping their jobs."

The fact of interest on the part of a witness is always admissible as affecting his credibility. This being a part of the evidence of the case and part of the issues upon which the jury are to pass, its discussion is permissible. The argument as to the witness Hobson was severe. There was evidence admitted, without objection, that in applications for employment he had knowingly misstated his name and age. It is our opinion that reversible error is not shown.

■ In the closing argument counsel, in discussing the evidence as to what jobs plaintiff was able to perform, stated: "Has the Southern Pacific or the Texas & New Orleans Railway Company come forward and said, 'Jack, we have lots of jobs in our office here open for you'? No, let them palm him off on somebody else, and tell you all that fairy story about all—."

Defendant objected on the ground that under the Company rules a man who has a lawsuit against the Company is disqualified to work for the Company. The court overruled the objection. Counsel, continuing his argument, said: "Yes, other companies of course have other rules,—it looks like, to me, they (meaning defendant railroad company) ought to come forward and offer him a job. I think it goes to the evidence and is very material."

A medical witness had testified on behalf of the defendant as to many employments plaintiff was able to perform despite his injury. This testimony went so far as to indicate that plaintiff, with the aid of his artificial leg, might dance. Defendant's objection to the argument depended upon facts that do not appear to be in the record. There was no evidence as to any rule of the defendant in respect to this matter. The effect of the argument and the objection was that plaintiff got before the jury the assertion the defendant had not offered plaintiff employment, and defendant the assertion of its counsel that it had a rule against employing any one having a lawsuit against it. There is, we think, in the record no testimony supporting either assertion. Certainly the objection made to the argument was not a valid objection.

On request of plaintiff's counsel, made in open court (in the presence of the jury, we presume), defendant's counsel furnished him a blueprint of the map of a portion of the railroad yards here involved. In the closing argument counsel for the plaintiff stated: "As to producing this blueprint, who produced it? We had to dig to get it out, like a man pulling molar teeth."

■ Defendant objected to the statement. The Court sustained the objection, and instructed the jury not to consider same for any purpose. So far as we are able to tell from the record, there was no basis in fact for the statement made. The blueprint was promptly produced on request of plaintiff. However, in view of the fact that the court promptly instructed the jury to disregard the statement, and the further fact that the jury had first hand information, we think reversible error is not presented.

■ In the closing argument, in discussing damages, plaintiff's counsel stated: "I don't think a man on this jury would sell his leg for a hundred thousand dollars."

Defendant objected and requested the court to instruct the jury not to consider such argument. The court overruled the objection. Defendant excepted. This argument is not susceptible of the construction that the jury should award that amount as damages. The jury no doubt knew plaintiff was seeking only sixty thousand dollars as damages. It is asserted that it was an appeal to the jury to place themselves in plaintiff's position and decide the issue or issues from that standpoint. It seems to us that it is an argument as to an obvious fact, the purpose being to call the attention of the jury to the seriousness and extent of plaintiff's injury. The nature of plaintiff's injury was obvious, as was its seriousness. In the last analysis, it amounts to no more than a statement that damages would not adequately compensate for the injury suffered.

In the case of Karotkin Furniture Co. v. Decker, Tex.Com.App., 50 S.W.2d 795, 796, a somewhat similar argument was held not to constitute error. The argument was: "Gentlemen, no sum of money could compensate me for having my skull fractured, and having to stand two or three operations, teeth knocked out and eyes crossed." In relation to this argument it is said: "Certainly no sane person would be willing to sustain such injuries and go through such suffering for any amount of money, and we can see no injury in counsel arguing such obvious fact to the jury."

Here, we think the argument complained of amounts to no more than a statement that a sane man would not sell his leg for a hundred thousand dollars.

The distinction, we think, between the cases of Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 95 S.W.2d 956; Texas Coca Cola Bottling Co. v. Lovejoy, Tex.Civ.App., 112 S.W.2d 203, writ dismissed; Metropolitan Life Ins. Co. v. Moss, Tex.Civ.App., 109 S.W.2d 1035, writ dismissed; and Wagley v. Fambrough, Tex.Civ.App., 163 S.W.2d 1072, relied on by defendant, and the case here, is that in those cases the jurors were urged to take a partisan position. Here, this was

not the case. In our opinion, the views here expressed find strong support in the decisions. See Karotkin Furniture Co. v. Decker, Tex.Com.App., 50 S.W.2d 795; Ochoa v. Winerich Motor Sales Co., 127 Tex. 542, 94 S.W.2d 416; Texas & N. O. Ry. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160; Wells et al. v. Henderson, Tex.Civ.App., 78 S.W.2d 683, writ refused.

We think what we have stated herein in a general sort of way covers each and every point of error presented by the defendant. In our opinion reversible error is not shown.

It is therefore ordered that the judgment of the trial court be in all things affirmed.

WALTHALL, J., not participating.