MISSOURI. KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. FRANK PRICE.

Decided December 12, 1907.

1.—Passenger—Alighting for Lunch—Duty of Carrier—Case Distinguished.

Where a conductor of a railway train, in reply to a question by a passenger, told the passenger that the train would stop at a certain station long enough for the passenger to go and get a lunch and that he could go and get a lunch before the train would leave, the conductor was guilty of negligence in starting the train before the passenger had reasonable time to get the lunch, and hence the company was responsible for injuries received by such passenger in attempting to board the train after it had started, it not appearing that the passenger was guilty of negligence in making such attempt. Missouri Pac. Ry. Co. v. Foreman, 73 Texas, 311, distinguished.

2.—Same—General Rule.

Where a railway train stops at an intermediate station of a passenger's trip and the passenger, using proper care, alights for a purpose consistent

with his character as passenger, intending to return and continue his passage upon the same train, he does not lose his character as passenger and is entitled to the protection due to a passenger, in his efforts to board the train.

### 3.—Harmless Error—Improper Testimony.

Testimony as to the general reputation for truth and veracity of the plaintiff in a damage suit is ordinarily improper, but the admission of such testimony over objection is harmless when other testimony to the same effect has already been admitted without objection.

### 4.—Discretion of Court—Suspension of Trial.

The refusal of a trial court to grant a defendant's motion to suspend or postpone a trial to give the defendant time to procure the attendance of a witness, was not an abuse of discretion when it appeared from the record that the witness had never been subpenaed, or sworn as a witness, and was not under rule when excused by plaintiff's counsel.

### 5.—Damages—Loss of Leg.

A verdict for $8,500 for the loss of a leg was not excessive in the case of a carpenter with a life expectancy of 34 years, earning $60 per month and employed about two-thirds of his time.

Appeal from the District Court of Montague County. Tried below before Hon. Clem. B. Potter.

*Jas. A. Graham,* for appellant.—A conductor or other employee engaged in the operation of a railway train, has no authority to agree that the train which has stopped at a water tank for water will stand there long enough for a passenger to leave the train and get something to eat, and the fact that such passenger may think said train had stopped at a station will not render the railway company liable in damages for personal injuries sustained by such passenger in attempting to board said train; it not having stood as long as he expected it would. Missouri P. Ry. Co. v. Forman, 73 Texas, 311; International & G. N. Ry. Co. v. Best, 93 Texas, 344; Missouri, K. & T. Ry. Co. v. Perry, 8 Texas Civ. App., 78; Missouri, K. & T. Ry. Co. v. Kendrick, 32 S. W. R., 42; Sevier v. Vicksburg M. Ry. Co., 48 Am. Rep., 74; St. Louis & S. W. Ry. Co. v. McCullough, 33 S. W. R., 285.

*Stuart & Bell,* for appellee.

LEVY, Associate Justice.—The appellee brought this suit against the railway company to recover damages for personal injuries received by him while riding as a passenger on one of the defendant's trains. The case was tried in the District Court, to a jury, and resulted in a verdict and judgment for the appellee for the sum of eighty-five hundred dollars ($8500), which the appellant seeks to have reversed for errors assigned.

The evidence in the case establishes the following: That in the night time of December 20, 1905, the appellee boarded, at St. Jo, a mixed train of the appellant's that carried passengers. He was going to Gainesville, Texas, over the appellant's railway. The night was dark, and the caboose of the train poorly lighted; he paid the conductor his fare on the train. There being lady passengers in

the caboose, he went out on the platform of the caboose to smoke. After passing the station of Muenster the train made a halt; thinking the halt or stop was at the station of Myra, and desirous of getting a lunch at that place, the appellee asked the conductor in charge of the train if this was Myra where the train had stopped, and whether or not the train would stop long enough for him to get a lunch. The conductor replied to him that this was Myra where the train had arrived, and that the train would stop long enough for him to get off and get a lunch, and that he would have time to go and get a lunch before the train would leave, and that he could go and get a lunch. The appellee, relying upon these statements of the conductor, alighted from the caboose and was proceeding in the direction in which he understood the lunch counter was located; but before he had gone very far in this direction, from the train, he heard the train begin to start, and ran to get aboard it. The train was moving slowly when he reached it, and he reached the hand-rails of the front end of the caboose to get up on the caboose; and as he was getting up on the caboose, endeavoring to board it, the train suddenly increased its speed and hurled or jerked him to the ground, throwing him under the car in such a way that the wheels passed over his leg, mangling it so that it had to be amputated above the knee. The conductor in the trial denied that he told the appellee that the halt was at Myra, or that he could get off for the lunch, or that the train would wait for him, and that he knew the appellee had gotten off. The evidence shows that the place where the train was then halted was not in fact at Myra, but was at a water tank for the purpose of having the engine take water; but the evidence does not show that the appellee in fact knew the place the train was then stopped was not in fact Myra. The evidence is conflicting as to whether the appellee was intoxicated at the time, there being some evidence that he was, and some that he was not. There is evidence in the record to support the findings that the conductor told the appellee that the stop was at Myra; and that the conductor knew the purpose of appellee in getting off the train at the time; and that the conductor informed appellee he would have time to get off and get a lunch, and that appellee could get off and get the lunch and return before the train left; and that the conductor knew that the appellee had gotten off the train for the purpose; and that the train did not wait a sufficient time for appellee to re-enter the car after he had alighted. The conductor in charge of the train, after appellee had made known to him his desire to alight at Myra to get a lunch, and knowing that appellee had alighted from the train for the purpose, was guilty of negligence in moving the train before appellee had time to re-enter; and the railway company was guilty of negligence in failing to exercise sufficient care and caution for the safe transportation of appellee, a passenger on its train. That the appellee was not guilty of contributory negligence either in alighting at the point he did or in endeavoring to board the car.

In his first assignment of error the appellant contends that the court erred in not sustaining the general demurrer to the petition.

Appellee in his petition alleged that he was a passenger on the train; that after the train had passed Muenster, going east, it made a stop, and that it was dark; that when the train stopped appellee, thinking the train had arrived at the station of Myra, and desiring something to eat, asked the conductor in charge of the train if the train had arrived at Myra and whether or not the train would stop long enough for him to get a lunch; that the conductor announced to him that the train had arrived at Myra and would stop long enough for him to alight and get a lunch, and that he would have time to go and could go and get a lunch before the train left; that appellee, relying upon the announcement and statement to him by the conductor, alighted from the train and proceeded in the direction where he was informed there was a lunch stand; that before he had proceeded very far from the train, and without any notice to him, the train started up and proceeded to move; and realizing that the train was going to leave him, he started back at once to the train and endeavored to board the same, and while he was endeavoring to board the same it suddenly increased its speed and hurled him under the wheels of the car and mangled his leg. He further alleged that the conductor knew he had gotten off of the train for the purpose that he did, and knew that he was proceeding to get the lunch, and knew that he had not returned to the car—or by the exercise of ordinary care could have known that he had not re-entered the car.

There is a distinguishment in the case of Missouri Pac. Ry. Co. v. Foreman, 73 Texas, 311, and in the facts plead in this petition. In the Foreman case the conductor was merely asked the question how long the train would stop at Dodge. But here the appellee asked the conductor and was told by him after the train stopped that it would stop long enough for him to go and get a lunch, and that he could go and get a lunch before the train left the place where it then was.

It is the well settled law that carriers of passengers owe a high degree of care for the safety of passengers. Likewise it is a well settled rule requiring of passengers in endeavoring to board cars, to use such care and caution as a person of ordinary prudence would use under similar circumstances. Where a train stops at an intermediate station of a passenger's trip, and the passenger, using proper care, alights from the train for a proper purpose consistent with the character of a passenger, intending to return and continue his passage upon the same train, he does not lose his character as a passenger, and is entitled to the protection due to a passenger in his efforts to board the train. Parsons v. New York Cent. Ry., 21 N. E., 145; Galveston, H. & S. A. v. Cooper, 2 Texas Civ. App., 42; Missouri, K. & T. Ry. v. Overfield, 19 Texas Civ. App., 440; St. Louis S. W. Ry. v. Humphreys, 25 Texas Civ. App., 401.

The railway company does not engage in the contract of passage to give the passenger an opportunity to leave the cars at intermediate stations of his journey, nor would it be required that a conductor in charge of the train presume that he will leave the car. Yet it is the law that where the passenger does alight at an inter-

mediate station for any purpose consistent with the character of a passenger, with the implied or express consent of the carrier, and with the knowledge on the part of the carrier that he expects to return and continue his passage on the same train, then the relation of carrier and passenger does not cease but continues to exist as to that train, and the obligation rests upon the carrier to afford him an opportunity to safely re-enter the car. A conductor put in charge and control of a train by a railway company is acting within the scope of his employment and authority when discharging towards a passenger on his train any duty the railway company owes to him. International & G. N. Ry. v. Anderson, 82 Texas, 516. Negligence of the conductor in charge of the train in respect to the duties required of the company to a passenger, renders the company liable for the negligence. Gulf, C. & S. F. Ry. v. McGowan, 65 Texas, 640. It was within the scope of the authority of the conductor in charge of the train that appellee was riding upon, to announce to him as a passenger on the train, at his request, the name of the station that the train was then stopped at, and to state to him the length of time the train would remain there, and to hold the train standing there in accordance with the answer at the time so designated. Railway v. Elliott, 61 S. W., 726. The appellee having made known to the conductor his desire to alight and get a lunch during the time the train stopped, and the conductor having informed him he would have the time to do so, and having consented that he might alight for the purpose, appellee, when he alighted for the purpose, did not cease but continued to sustain the relation of passenger to the railway company. Appellee being still a passenger at the time and under the circumstances, it was required of the conductor in charge of the train that he exercise for the company its obligation of prudence and care for appellee's safety, and if appellee did not re-enter sooner, to delay the train in accordance with his answer of the time designated to appellee in order to accomplish that end. The acts of the conductor and his announcements to appellee were done in the course of the performance of his services as conductor operating the train for the railway company, and show a violation of a duty that the carrier owed appellee in that respect, and were not an independent personal obligation of the conductor to the appellee omitted to be done as an accommodation, like awaking a sleeping passenger. The petition stated an actionable case, and did not show contributory negligence as a matter of law, and the demurrer was properly overruled.

The second assignment of error is overruled.

The third and fourth assignments complain of the admission of evidence. Appellee was permitted to prove his general reputation for truth and veracity. Appellant asserts that the appellee was not warranted in this case to make such proof. The record shows that the appellee proved his general reputation for truth and veracity by two witnesses before any objection was made to such evidence, and the same fact was proven by two witnesses after the objection was entered. The bill of exception in this case only reaches an

objection to this evidence as to two witnesses. The appellant did not offer to dispute the evidence upon this collateral issue. In this attitude of the evidence on this question, if the court had sustained the objection to the evidence of the two witnesses complained of, the same facts testified to by these two witnesses would have yet remained unobjected to before the jury in the evidence of the other four witnesses used on the same question. So it appears to us that if there was error in not excluding the evidence on objection of the two witnesses here objected to, it was harmless, and the assignments must be overruled. Chicago, R. I. & T. Ry. v. Porterfield, 92 Texas, 442. Also the further contention under the fourth assignment should be overruled. Boon v. Weathered, 23 Texas, 664.

The appellant complains in the fifth assignment, of the action of the court in refusing to suspend further proceedings in the trial of the cause until the attendance of a witness could be had. The bill of exception does not show an abuse of the discretion of the court in refusing to grant this postponement, nor does it show any misleading or improper action of the appellee's attorneys. As incorporated in the record, it appears that the witness for which the postponement or delay was sought had never been subpoenaed as a witness and was not sworn as a witness and was never placed under the rule as a witness, and was not under the rule when excused by appellee's counsel. The assignment is overruled.

Appellant's sixth and seventh assignments complain of the overruling of the motion for new trial, especially upon two paragraphs contained in the motion. These two grounds urge that the evidence as a whole does not show negligence on the part of the railway, and does show contributory negligence on the part of the appellee.

Appellee testified to the facts plead in his petition, and the jury, under a correct and applicable charge of the court, found in his favor on these facts. The evidence was conflicting between him and the conductor. These facts plead therefore come to us on findings of fact by the jury as the established facts in the case. The ruling upon the demurrer settles the question that if the facts plead were true they would constitute actionable negligence. The fact that the train was shown by the conductor to be at a water-tank instead of at Myra, would not relieve the negligence of the appellant acting through its agent in charge of the train. If he misled the passenger to his injury, we do not think the company could claim exemption from the act. It was for the jury to decide whether or not appellee was guilty of contributory negligence in attempting to board the train on the night he was injured. The appellee says the train was going at the rate of four or five miles per hour when he first attempted to get on it, and he thought he was safe in trying to get on it at that speed. There is sharp conflict of evidence on the issue of whether or not appellee was intoxicated at the time. Appellee says he was not. The jury rendered a general verdict in favor of appellee on all issues submitted. One of the issues was his negligence which involved drunkenness.

We assume the truth of the finding that he was not drunk at the time of his injuries. As a matter of law we can not say he was guilty of contributory negligence.

It therefore being established by evidence sufficient to support the finding that the appellant was guilty of negligence, and that appellee was not guilty of negligence, and the negligence of the appellant's conductor was the proximate cause of appellee's injuries, we overrule these assignments. Missouri, K. & T. Ry. v. Gist, 31 Texas Civ. App., 662; Texas & Pac. Ry. v. Murphy, 46 Texas, 362; Mills v. Missouri, K. & T. Ry., 94 Texas, 242; Houston & T. C. Ry. v. Stewart, 14 Texas Civ. App., 703.

The eighth assignment complains of the amount of the verdict. The appellee was 32 years old, had a life expectancy of practically 34 years, was a carpenter and earned $60 per month, and was employed about two-thirds of the time; lost a leg and could not efficiently follow his avocation any more. It may be true that he might be able to labor at other work of some kind, yet the jury evidently and properly considered that feature of the evidence in making the award. We are not prepared to say the verdict is excessive. The case is ordered affirmed.

*Affirmed.*

Writ of error refused.