KIRKLAND v. TEXAS & N. O. R. CO.

(Court of Civil Appeals of Texas.  Galveston. Oct. 24, 1911.)

1. CARRIERS (§ 278*)—INJURIES TO PASSENGERS—CONTRIBUTORY NEGLIGENCE.

A woman 18 years old and inexperienced in railroad travel, who asked a fellow passenger, instead of trainmen, as to whether the next stop was her destination, and who on receiving an affirmative answer alighted at the next stop, which was an intermediate point, was not, as a matter of law, guilty of such negligence as will preclude her from recovering for the injuries received in consequence of leaving the train before reaching her destination.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 278.*]

2. CARRIERS (§ 277*)—PASSENGERS—OBLIGATION OF CARRIER.

A woman 18 years old and inexperienced in railroad travel left the train at an intermediate point, under the mistaken belief that she had reached her destination. A brakeman assisted her in alighting. The trainmen knew her destination, and that she had purchased a ticket to that point. By the time the train started, she discovered her mistake, and immediately requested that the train be stopped, and that she be permitted to again board it and continue her journey, and, though the carrier's servants knew that she had made a mistake, they declined to stop the train. Held, that the refusal of the trainmen to give her an opportunity to reboard the train was an actionable breach of duty, authorizing the recovery of compensatory, but not exemplary, damages.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 277.*]

3. CARRIERS (§ 280*)—CARRIAGE OF PASSENGERS—OBLIGATION TO PASSENGERS.

A carrier is charged with the highest degree of care towards its passengers, and where its servants fail to use such degree of care it must respond for all proper damages sustained by the passengers thereby.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1085–1092, 1098–1106; Dec. Dig. § 280.*]

Appeal from District Court, Tyler County; W. B. Powell, Judge.

Action by Annie Kirkland, by next friend, against the Texas & New Orleans Railroad Company. From a judgment of dismissal, plaintiff appeals. Reversed and remanded.

J. A. Mooney and T. C. Mann, for appellant. Baker, Botts, Parker & Garwood and Orgain & Butler, for appellee.

McMEANS, J. Appellant, Annie Kirkland, by next friend, brought this suit against the appellee, Texas & New Orleans Railroad Company, to recover damages for personal injuries sustained by her through the negligence of the appellee. A general demurrer urged by appellee to her petition was sustained, and upon her declining to amend her case was dismissed, and from the judgment of dismissal she prosecutes this appeal.

Plaintiff alleged in her petition that she was a minor, 18 years of age, and inexperienced in traveling upon railroads; that the defendant was a common carrier of passengers for hire, and owned and operated a line of railroad from the town of Huntington, in Angelina county, to and through the town of Colmesneil, in Tyler county; that on or about the 26th day of June, 1909, plaintiff, at the town of Huntington, purchased from defendant a ticket which entitled her to transportation over defendant's railroad and upon its train from said town to the town of Colmesneil.

"Plaintiff further says that Miss Kirkland boarded the said train at said place with the intention to alight at her station at Colmesneil, and, not being familiar with intermediate stopping points along the line of said railroad, said Miss Kirkland, at the town of Rockland, not being acquainted with any one on said train, and for the purpose of securing information which would enable her to reach her place of destination safely, as was her desire, inquired of an old lady, a fellow passenger, if the next station at which defendant's train would stop was Colmesneil, and was then informed that Colmesneil was the next stop; that after said train upon which plaintiff was being transported had continued for several miles in a southerly direction from the town of Rockland said train came to a stop, and said Miss Kirkland, believing that the said train had arrived at her station (Colmesneil) undertook to alight from said train, and did get off said train, and was in so doing assisted from said train by the brakeman of defendant on said train; that in so doing the said Miss Kirkland alighted at a station to which she was not going, and through mistake; that the said defendant well knew that Colmesneil was her destination, or could have known thereof by the exercise of reasonable care and diligence; that it was their duty to know at what station she desired to get off, and said defendant did know that her place

of destination was Colmesneil at the time she alighted and got off said train; that the station at which the said Miss Kirkland alighted was not a regular stopping place for defendant's train, and the defendant well knew at the time that the said Miss Kirkland had purchased a ticket for transportation to Colmesneil, and not the station at which she got off, and well knew the said place at which the said train stopped was one of defendant's section houses, which was occupied by a negro section crew, and that no white people resided there, nor at any point within several miles of said section house.

"Plaintiff further says that as soon as she had gotten off said train, and by the time the said train had started to move, she discovered her mistake, and immediately requested that the train be stopped and she be permitted to again board the said cars and continue her trip to Colmesneil; that said requests were then made to the agents, servants, and employés of the defendant, and the said defendant's said servants, agents, and employés knew that she made the mistake of getting off at the wrong station, and said Miss Kirkland ran along the railroad track only a short distance from said train, crying and endeavoring to again board said train, and called in a loud voice, begging that said train be stopped, and said request was heard by the said agents, servants, and employés of defendant, and the passengers on said train then and there informed the said defendant's servants, agents, and employés that Miss Kirkland was being left at the wrong station, at a negro section house, and said agents, servants, and employés declined to stop said train and permit Miss Kirkland to board said train, notwithstanding they saw her and knew her mistake, but stated that it was none of their business to see or know that people knew where they were going.

"Plaintiff further says that Miss Kirkland was a white girl, and that as soon as she discovered that the occupants of said section house were negroes, and which discovery she made as soon as she had alighted, that she became very much frightened, and started to walk to Colmesneil along the track of defendant's railroad; that an old negro woman saw her frightened condition, and overtook her, and advised her that Mr. Jeff Allen, a white gentleman, lived about two miles from said place where they then were; that the only route was through woods; that said Miss Kirkland immediately employed the said negro woman, and paid for said services the sum of $1 to said negro woman to show her the route through the woods to said Mr. Jeff Allen's home, and that on account of the hot weather and the fright and mental suffering the said Miss Kirkland arrived at Jeff Allen's physically exhausted and almost prostrated from fright and men-

tal anxiety and suffering, and that she suffered great mental pain from said fright and anxiety, and still suffers in mind and body from said fright; that at all times since said fright she becomes very nervous when she thinks of the incident before alleged; that a few days after she arrived at her home in Groveton she was taken sick with fever and nervous headache, which spell of sickness lasted several days; that since the happening of said incident, as before alleged, her menstrual discharge (or monthly sickness) has been irregular, and that she has suffered much pain during her monthly sickness, whereas she had not suffered with pain before this time, and her menses had been regular, all occasioned by being denied the chance to reboard defendant's said train.

"Plaintiff further alleges that the injury to her was directly and proximately caused and occasioned by the negligence and carelessness of defendant, its agents, servants, and employés, in that: (a) In the fact that said agents, servants, and employés did not advise plaintiff before she left said train, or as she was leaving same, that Leah was not a station and not her destination; (b) in the fact that said defendant, its agents, servants, and employés did not stop said train and permit this plaintiff to enter its said coaches, and be carried to her place of destination after they discovered, knew, and saw her condition and the danger of her being left alone among the negroes, which duty they owed plaintiff, and which duty they negligently and willfully refused to perform.

"Plaintiff further alleges that defendant, its agents, servants, and employés were informed of her peril and condition, and saw her in said perilous condition in time to have easily stopped said train and permitted her to board same inside of two minutes, and proceed with safety to her place of destination, and that defendant, its agents, servants, and employés owed plaintiff the duty to stop said train, and permit her to again take passage on same after seeing her perilous condition. That defendant, its agents, servants, and employés knew they were leaving her all alone in the woods among negroes, with no white person near, where she would be at the mercy of any brute that might see her, and further knew that she had alighted from said train through mistake, and knew that great injury would likely result to plaintiff from being left alone, as before alleged. That, on account of her age and inexperience in traveling, the thought of the fact that she was alone among strange negroes filled her mind and brain with great fear and anxiety, from which she suffered very much mentally, and almost went wild. That defendant's agents, servants, and employés saw the perilous condition of plaintiff, and knew that she would suffer very much mentally, and that her health would in all probability be seriously affected by the

fright and mental suffering, and by the use of ordinary care and diligence defendant could have prevented the said injury and suffering."

Plaintiff alleged that she had sustained damages in the amount of $1,000 as actual damages and $5,000 as exemplary damages, and prayed judgment for these sums.

Appellant's assignments of error are based solely upon the action of the court in sustaining the general demurrer.

[1] Assuming for the purposes of the demurrer that the allegations of the petition are true, we think a good cause of action for the recovery of actual damages is stated. The petition shows that plaintiff was young and inexperienced in railroad travel, and that at an intermediate point she made inquiry of a fellow passenger if the next stop would be at the place where she was going, and was informed that it was. Perhaps the exercise of ordinary care to be exacted of an adult, experienced in traveling, would have required that such information be sought from the conductor of the train, or some other of its operatives, but we cannot say, considering appellee's age and inexperience, that she was guilty of negligence, as a matter of law, in acting upon the information given her by a fellow passenger, and she is not precluded from recovering on that ground, if it is shown that she is otherwise entitled to recover.

Appellee contends that no facts are alleged showing that appellant was induced to alight from the train at the wrong station by any acts on the part of appellee or its agents, and that appellant terminated the relation of carrier and passenger by her own voluntary act in leaving the train, and the relation of carrier and passenger did not exist between them at the time complained of.

It has been stated to be the law that, where the passenger does alight at an intermediate station for any purpose consistent with the character of a passenger, with the implied or express consent of the carrier, and with the knowledge on the part of the carrier that he expects to return and continue his passage on the same train, the relation of carrier and passenger does not cease, but continues to exist as to that train; and the obligation rests upon the carrier to afford him an opportunity to safely re-enter the car. Railway v. Price, 48 Tex. Civ. App. 210, 106 S. W. 702. And it has also been held that the passenger may leave the train at an intermediate station without the knowledge or consent of those in charge, with the intention of resuming passage on the same train, without terminating the relation of carrier and passenger. Railway v. Cooper, 2 Tex. Civ. App. 42, 20 S. W. 992.

[2] The petition in this case shows that appellant left the train at an intermediate station, under the mistaken belief that she had arrived at her destination; that she was assisted to alight by the brakeman; and that defendant well knew that Colmesneil was her destination at the time she alighted, and that it well knew at the time that plaintiff had purchased a ticket for transportation to Colmesneil, and not to the station at which she got off. The petition further alleged that as soon as plaintiff had gotten off the train, and by the time the train started to move, she discovered her mistake, and immediately requested that the train be stopped, and that she be permitted to again board the same and continue her journey to her destination; that she made such request to the agents, servants, and employés of defendant, and that said agents, servants, and employés knew that she had made the mistake of getting off at the wrong station, and that said request was heard by said agents, servants, and employés, but that they declined to stop the train and permit plaintiff to board the same, notwithstanding they saw her and knew her mistake, but stated it was none of their business to see or know that people knew where they were going. She further alleged that the train would not have lost more than two minutes' time, had it been stopped long enough for her to board it.

It is no doubt the right of a passenger to terminate the relation of carrier and passenger at any time during the course of his transportation that he sees fit to do so; and this may be done by his voluntarily leaving the train upon which he is traveling with the intention not to resume his journey. But it is believed, especially in the case of young and inexperienced passengers, leaving the train at an intermediate point, under the mistaken belief that the destination has been reached, where the mistake is known to the employés in charge of the train at such a time that, by the exercise of that high degree of care the carrier owes for the safety of the passenger, the latter might be again permitted to re-enter the train and resume his journey, that the relation of carrier and passenger has not ceased, and the failure or refusal of the train operatives in such case to afford the passenger the opportunity to reboard the train and resume his journey is such a breach of duty the carrier owes to the passenger as to make it responsible for all the consequences that naturally result from such breach.

Appellee says that, "while it may seem from the allegations in plaintiff's petition that the train employés violated that rule that should guide the conduct of men, yet the allegations do not show any breach of duty for which recovery may be had. Common decency, as well as humanity, might suggest that a young girl not be treated in the manner suggested by appellant's pleadings, and that she should have received more consideration at the hands of the trainmen;

and that the trainmen may have fallen short of their duties as men would not necessarily imply that their actions were such as to authorize a recovery of damages against the railroad company."

[3] As to this contention, we think it sufficient to say that a carrier, charged with a high degree of care towards those whom it has contracted to transport, cannot, through its agents to whom it intrusts the exercise of that care, ignore "common decency, as well as humanity," in the treatment of its passengers; and, if they fall short of "their duties as men" to use the degree of care exacted by law of carriers, the delinquent carrier must respond for all proper damages sustained by the passenger thereby.

We think plaintiff's petition sufficiently stated a cause of action, and that the court erred in sustaining a general demurrer thereto. We think, however, that under the facts pleaded plaintiff is not entitled to recover exemplary damages. The judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.