## FORT WORTH & D. C. RY. CO. v. MORROW. (No. 1836.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 2, 1921. Rehearing Denied Dec. 14, 1921.)

1. **Master and servant** ⬅═295(1)—**Assumption of risk held not clearly defined.**

An instruction that deceased railroad employee assumed all the risk and dangers ordinarily incident to the business, but not the risk arising from defendant's negligence, and also the risks and dangers of which he knew and of which he necessarily learned in the discharge of his duties, *held* erroneous as being confusing as to the risk from known negligence of defendant.

2. **Master and servant** ⬅═280—**Employee's knowledge of defect need not be proven by direct evidence.**

Where an assistant roadmaster was killed by a lever, used to unload a car of gravel, flying back when he was attempting to operate it, and the evidence was contradictory as to whether deceased knew of the defect in the machinery or whether he could see its condition from where he was standing, direct and positive testimony as to such facts was not necessary, but they might be established and inferred from other facts and circumstances.

3. **Master and servant** ⬅═288(5)—**Railroad employee's knowledge of defective dumping machinery on car held for jury.**

Where an assistant roadmaster on a railroad was killed by the dumping lever on a car of gravel flying back while he was assisting in operating it, evidence *held* sufficient to raise the issue whether he knew that the machinery for dumping the car was defective.

4. **Trial** ⬅═352(1)—**Special issue of assumed risk held too general.**

In an action for the death of an assistant railroad roadmaster struck by an alleged defective dumping lever on a gravel car, a special issue as to assumed risk *held* erroneous as too general.

5. **Trial** ⬅═350(2), 352(1)—**Ultimate facts only to be submitted, and each ultimate fact submitted separately.**

Under the provision of Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, only issues as

to ultimate facts should be submitted, the proper practice, in view of article 1984a, being to submit separately an issue as to every ultimate fact a finding on which will control the judgment.

**6. Trial ⊚⟳248, 352(4)—Issues of liability or defense must be particularly and concretely submitted.**

It is the duty of the trial court to submit the issues of liability or defense particularly and concretely rather than generally and abstractly, and this is true whether the case is submitted on a general charge or on special issues.

**7. Trial ⊚⟳350(7)—Issue held properly refused as not controlling.**

Where an assistant railroad roadmaster was killed while assisting in unloading a car of gravel by the dumping lever, into which he had inserted a lining bar, flying back, it was not error to refuse to submit an issue as to whether deceased knew of the danger of the lining bar in the dumping lever, since an answer to such issue would not be controlling.

**8. Master and servant ⊚⟳125(6)—Master's duty to know defects stated.**

The master's duty is to exercise ordinary care to know of defects in machinery, and he is charged with such knowledge, as he should have acquired the exercise of ordinary care to keep himself informed of such condition.

On Motion for Rehearing and to Certify.

**9. Trial ⊚⟳352(4)—Submission of issue of negligence must refer to particular charge pleaded.**

In submitting an issue as to the ultimate fact it is improper to submit a general issue as to whether defendant was negligent, without reference to the particular charge of negligence in the pleading; the issue submitted should be whether defendant was negligent in doing the specific act alleged, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1985.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Action by Laura Morrow, administratrix of the estate of J. M. Morrow, deceased, against the Fort Worth & Denver City Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Thompson, Barwise, Wharton & Hiner, of Fort Worth, and Turner & Dooley, of Amarillo, for appellant.

Barrett, Works & Deatherage, C. B. Reeder, and W. H. Childers, all of Amarillo, for appellee.

BOYCE, J. Laura Morrow, administratrix of the estate of her deceased husband, J. M Morrow, brought this suit to recover damages for the death of her said husband, which was alleged to have resulted from the negligence of the defendant, and this appeal is from a judgment for the plaintiff in such suit.

It is shown that J. M. Morrow met his death while in the service of the defendant railway company and engaged in unloading gravel along defendant's track. He was at the time he was killed, operating a lever for the purpose of unloading, by dumping, a car of gravel. For some cause the lever flew back, striking him on the head and crushing his skull. Liability of the defendant was based on allegations that the machinery was defective and dangerous and defendant was negligent in requiring its servant to work with such dangerous machinery. The defendant, in addition to a general denial and special answers, not necessary to be set out, alleged that if said machinery was defective the deceased knew of such defect and the danger incident to its use in such condition and assumed the risk. It also pleaded that the deceased, by making some alteration or addition to the dumping machinery, caused it to be dangerous and assumed the risk of such danger.

The jury found that the dumping machinery was defective, as alleged; that the defendant was negligent in furnishing such machinery; that the injury was not the result of risks assumed by the deceased; and that deceased was not guilty of negligence or contributory negligence, causing or contributing to the injury. It was admitted that the liability of the defendant is to be determined by the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665). We will state in detail such further facts as may be necessary in consideration of the assignments, as we discuss them.

The first three assignments complain of this charge given by the court:

"The deceased assumed all the risk and dangers ordinarily incident to the business in which he was engaged at the time of his death; but he did not assume the risk, if any, which arose, if any did arise, from the negligence of the defendant, if the defendant was guilty of negligence. The deceased also assumed the risks and dangers, if any, of which he knew and of which he necessarily learned in the discharge of his duties in time to have prevented the injury alleged."

This charge was given in connection with the issue of assumed risk, which was submitted in the following language:

"Did the deceased, J. M. Morrow, assume risks the proximate cause of his injury and death?"

[1] The complaint urged against the charge is that it deprived the defendant of the benefit of the plea of assumption of risks arising from the negligence of the defendant, known to the deceased, or of which he had necessarily learned in the discharge of his duties at the time of doing the act in consequence of which he suffered the injury. We think the charge is objectionable. The

---

general exception embodied in the first sentence was quite likely to be construed by those unfamiliar with the law as applicable to the whole subject of assumed risk, and not as being controlled itself by the second sentence of the charge. We need not go into an examination of the rules of construction for the purpose of determining what should be held to be the meaning of this charge, for, to say the least of it, the language was apt to be confusing and to be misunderstood by the jury, and the appellant, having made specific objections to the charge on this account, had the right to have the court express his meaning in clear and unmistakable language. We held a charge in exactly the same language, given in the case of A., T. & S. F. Ry. Co. v. Francis, 227 S. W. 344, to be erroneous. The appellee contends, however, that, in any event, this error would be harmless, because she contends that the evidence was not sufficient to raise an issue of assumption of risk resulting from the extraordinary risk imposed by the defect in the dumping machinery; it being asserted that there is no evidence sufficient to have warranted the finding that the deceased knew, or must be held to have known, of the defect. The evidence on this issue is to the effect that the deceased was assistant roadmaster, superintending the unloading of this train of gravel cars, and had had long experience in this kind of work. Others were doing the actual work of operating the dumping machinery as the cars were being unloaded; and it was customary, if anything went wrong, or more help was needed, for such person to call on the deceased for instructions or help. The deceased's son and a Mexican, working together, attempted to dump this particular car.

The testimony is somewhat conflicting as to how the dumping lever and machinery worked, and the evidence appears in such manner in the record as that we do not clearly understand the details of the operation of the machinery. In general, it may be said that the evidence shows that the car was divided into four compartments, and that the bottom of each compartment consisted of two swinging doors, which were held up by rods to which they were attached, until by operation of the dumping machinery they were allowed to swing open. The dumping machinery was operated by a lever, located near each inside corner of the car—a lever for each compartment. The lever was about 2½ or 3 feet long, and consisted of a hollow iron pipe which would be standing in an approximate upright position when the dumping process was begun. In order to dump the car it was necessary to move this lever toward the center of the car; it being located between the coupling and outer corner. The lever worked a ratchet wheel, and would have to be moved so as to turn the ratchet wheel past the engagement of several

teeth of the wheel before the dumping occurred. If the ratchet engaged in the teeth of the ratchet wheel properly, it prevented the lever from flying back after it moved forward. The defendant's testimony is to the effect that, after several notches of the ratchet wheel have been worked and the car begins to dump, the lever always moves backward toward the corner of the car, though this is denied by the plaintiff's testimony. It requires considerable force to move this lever when the car is loaded, as it is operated against the load on the swinging doors. The defendant's son and the Mexican were unable to push or pull the lever of this car forward and dump the car, though they put in the hollow iron pipe a lining bar, thus increasing by several feet the leverage. This use of a lining bar, or something else, for this purpose, was not unusual. The son then got under the car to see if anything was wrong. He discovered that the ratchet wheel, ratchet, track, etc., of the machinery were very rusty and worn, but did not consider that its condition made it dangerous. The testimony of other witnesses who examined the machinery after the death of J. M. Morrow is to the effect that such machinery was in good condition. The deceased's son, after the examination just mentioned, called to his father, who was about 25 feet away, to help dump the car. He testifies that nothing was said as to the condition of the machinery, though his father knew that it was "sticking," as otherwise he would not have been called on for help. The testimony is contradictory as to whether the ratchet machinery and its operation can be seen by one standing in position to operate the lever in dumping the car. The deceased and his son pushed while the Mexican pulled on the lever, and when it failed to move gave it several jerks. Finally the lever was pushed and pulled forward, releasing the engagement of the ratchet, but it immediately flew back, when the lining bar struck deceased on the head and killed him. There is no direct evidence that the deceased knew of the defect and the danger, and, as we have already said, the testimony as to whether he could see the condition of the machinery from where he was standing is contradictory, and we have been in some doubt as to whether the evidence is sufficient to raise this issue.

[2, 3] Direct and positive testimony as to such facts is not necessary, but they may be established and inferred from other facts and circumstances. Chesapeake & O. Ry. Co. v. De Atley, 241 U. S. 310, 36 Sup. Ct. 564, 60 L. Ed. 1016; P. & S. F. Ry. Co. v. Kornegay, 206 S. W. 711. The deceased was a man of long experience in this business, and was, no doubt, aware of the result that might be expected from a defect in this mechanism. The fact that two men, with the aid of the additional leverage furnished by the lining

bar, had been unable to operate the machinery, may have been considered by the jury to have some tendency to notify deceased that something was wrong. He was standing near while his son was examining it, and, according to some of the testimony, might have seen its condition by looking down from his position at the lever. The trial court considered the evidence sufficient to raise the issue, and we are not prepared to say that the issue was not in the case.

[4, 5] The fourth and seventh assignments complain of the manner of the submission of the special issue of assumed risk, as above quoted; the objection being that it is abstract and too general and submits a mixed question of law and fact. The fifth assignment complains of the refusal of the court to give requested issues, submitting such issue more specifically and in the concrete. We think the submission of the issue was too general, and the requested issues, which were substantially correct, should have been given. The appellate courts of this state have always held that only issues as to ultimate facts should be submitted; in fact, the statute in effect so provides. R. S. art. 1985. The proper practice is to submit separately an issue as to every ultimate fact, a finding on which would control the judgment. R. R. art. 1984a. The facts stated generally, on which the defense of assumed risk of the character we are discussing is based, are: (1) Knowledge by the servant sustaining the injury of the defect; (2) appreciation of the danger resulting from such condition. P. & S. F. Ry. Co. v. Brooks, 199 S. W. 669, and authorities cited. And such would be the ultimate facts as to which issues should be properly submitted. The court combined these with a further issue of proximate cause, which involved a finding of still another ultimate fact.

[6] It has also always been held that it is the duty of the trial court to submit the issues of liability or defense particularly and concretely rather than generally and abstractly, and this is true whether the case is submitted on a general charge or on special issues. We have consistently adhered to these rules, though appellee's counsel has apparently misunderstood the effect of our opinions. A., T. & S. F. Ry. Co. v. Francis, 227 S. W. 342 (12); Dallas Hotel Co. v. Fox, 196 S. W. 647 (4); K. C., M. & O. Ry. Co. v. Bomar, 207 S. W. 571 (1); C. & S. Ry. Co. v. Rowe, 224 S. W. 934 (13); Texas Refining Co. v. Alexander, 202 S. W. 133; Philpott v. Edge, 224 S. W. 263; Texas Employers' Association v. Downing, 218 S. W. 112; Fort Worth & Denver City Ry. Co. v. Hawley, 235 S. W. 659, decided this day. In three of the above-cited cases we expressly held that the submission of an issue of contributory negligence by merely asking the question as to whether "the plaintiff was guilty of contributory negligence" was too general and abstract. We held in the Rowe Case that under the particular facts of the case the error in such a general submission of the issue was not reversible, though we took occasion to warn against the error into which the trial court and appellee's counsel have fallen in this case. In the case now under consideration we cannot avoid the conclusion that the submission of the general abstract issue of assumed risk, in connection with an incorrect and confusing charge on the law thereof, will necessitate a reversal of the case.

[7] We do not think there was any error in the refusal to submit the requested issue referred to in the sixth assignment; that is, as to whether the deceased knew of the danger of the lining-bar in the dumping lever. An answer to this issue could not, in connection with the answer to any other issues submitted or requested, have controlled the judgment. The danger, if there was any, primarily arose from other causes. The lining bar did not make the situation dangerous; it merely made the lever longer and thus more liable to hit the operator in the head, in case for some other cause the lever flew back. So, at most, it merely increased the possibility of serious injury. The issue was as to whether deceased knew of the existence of the primary cause of danger, and a finding on such issue controlled the disposition of the case.

The eighth assignment assigns error on the court's definition of proximate cause; the complaint being of the omission to charge as an element thereof that injury of some such character might have been foreseen by an ordinarily prudent person in position of the master as likely to result from the negligent act in question. The third assignment complains of the refusal of an issue which would have supplied this omission. There was no reference to this matter in the charge of the court. Logically, in a case of this kind the anticipation of injury is a matter for consideration in determining whether the act was negligent rather than in determining whether it was the proximate cause of the injury. Kirby Lumber Co. v. Cunningham, 154 S. W. 293. But as such anticipation of injuries is an element to be considered, either in connection with the issue of negligence or of proximate cause, and the defendant would be entitled to an instruction thereon, no practical benefit would result from a further discussion of the academic question suggested. T. & P. Ry. Co. v. Reed, 88 Tex. 439, 31 S. W. 1060; T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Gulf Cooperage Co. v. Abernathy, 54 Tex. Civ. App. 137, 116 S. W. 871; T. C. Ry. Co. v. Driver, 187 S. W. 981; Magnolia Petroleum Co. v. Ray, 187 S. W. 1091; Kirby Lumber Co. v. Cunningham, 154 S. W. 288. On another trial the court should give an appropriate instruction in accordance with the law as announced in

these decisions. If such an instruction be given as suggested, there would be no necessity for giving such an issue as is referred to in the tenth assignment; in fact, we do not think it would be proper to submit such an issue.

Under the eleventh, twelfth, and thirteenth assignments it is contended that a decision of the liability of the defendant depended on an answer to the question as to whether the alleged defects should have been discovered by the defendant in the exercise of ordinary care, and the charge of the court is objected to because the question is not so submitted, and in this connection complaint is made of the refusal of the court to submit an issue of inspection. There was an issue as to the existence of any defect at all in the machinery, and, of course, it was proper for the court to submit such issue to the jury. But another element of liability was knowledge, actual or constructive, on the part of the master of such dangerous condition of the machinery. Mo. Pac. Ry. Co. v. Henry, 75 Tex. 220, 12 S. W. 828; 3 Labatt's Master & Servant (2d Ed.) c. 43; Ebersole.v. Sapp (Com. App.) 208 S. W. 157; Texas & Pacific Ry. Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136; Looney v. Metropolitan Ry. Co., 200 U. S. 480, 26 Sup. Ct. 303, 50 L. Ed. 564. For other authorities see 12 Michie's Digest, p. 311.

[8] The question is somewhat akin to that discussed in the consideration of the eighth assignment. Negligence of the master in furnishing defective machinery depends on knowledge on his part as to the existence of such condition. This knowledge may be actual or constructive. The master's duty is, of course, to exercise ordinary care to know of the condition of such machinery, and he is charged with such knowledge as he should have acquired in the exercise of ordinary care to keep himself informed of such condition. Inspection is a means of acquiring such knowledge. The court did not submit a charge on such element of liability except as it was embraced in the general submission of the issue of negligence; and the defendant would be entitled, on proper request, to have such matter presented more specifically. We suggest that this may be done by the submission of an issue of knowledge, with instructions as to the law on the subject.

In view of another trial, we need not discuss the sufficiency of the evidence to sustain the amount of the recovery.

For the reasons stated, the judgment will be reversed and the cause remanded.

On Motion for Rehearing and to Certify.

[9] We have not held, as appellee's counsel seems to think, in this case, or in the case of Fort Worth & Denver City Railway Co. v. Hawley, 235 S. W. 659, decided at the same time, that special issues as to evidentiary facts ought to be submitted. We have expressly stated "that only issues as to ultimate facts should be submitted." But the ultimate fact itself is a specific fact. For instance, good pleading requires that the plaintiff in a suit for damages resulting from a defendant's negligence should specify the act the doing of which is charged as being negligent. In the effort to sustain or disprove the negligence charged many facts and circumstances may be offered in evidence and may be properly considered in arriving at the ultimate conclusion. Such facts are the evidentiary facts. Now, in submitting an issue as to the ultimate fact, it would be obviously improper, we think, to submit a general issue as to whether the defendant was negligent without reference to the particular charge of negligence in the pleading. The issue submitted should be whether the defendant was negligent in doing the specific act alleged. Such would be the issue made by the pleading which it would be the duty of the court on proper request to submit. Article 1985, R. S. We have carefully considered the opinion of the Commission of Appeals recently handed down in the case of T. & N. O. Ry. Co. v. Harrington, 235 S. W. 188, and do not think that our decision in these cases is in conflict therewith.

The motions will be overruled.