## FORT WORTH & D. C. RY. CO. v. HAWLEY.  (No. 1835.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 2, 1921. Rehearing Denied Dec. 14, 1921.)

**1. Carriers ⬅340—Action for death of caretaker of stock held not to present case of discovered peril.**

Where a person in charge of a shipment of stock as a caretaker alighted from defendant's freight train at a station to examine the stock, and was killed while attempting to board the train, which had started without notice to deceased, there being evidence to show that those in charge of the train did not know that deceased had left it, *held*, that the case was not one of discovered peril, and a recovery on that ground would not have been warranted.

**2. Carriers ⬅280(5)—Carrier's duty towards passenger on freight train stated.**

A carrier who accepts a passenger on its freight train is charged with the same degree of care as on a regular passenger train, but the passenger will be considered to have accepted passage with knowledge that he will not receive the same service as on a passenger train, and he is subject to the usual and ordinary handling and service by very competent and prudent persons on such train; he assenting to the inconveniences incident to such mode of traveling.

**3. Carriers ⬅247(5)—Status of passengers not lost by alighting at intermediate station.**

A passenger may remain such in getting off the train at an intermediate station, so long as his object is not inconsistent with his character as a passenger, and such right does not depend on notice having been given to the conductor that he desired to alight.

**4. Carriers ⬅320(9)—Lack of knowledge that stock caretaker had left train held not to relieve carrier from negligence in manner of starting as matter of law.**

Where a caretaker of stock alighted from a freight train at an intermediate station to examine the stock, and was killed in attempting to board the train, which had started without notice, it could not be held, as a matter of law, that because the operatives of the train did not have notice that deceased intended to leave the train, or had done so, they were not guilty of negligence in starting the train without notice.

**5. Carriers ⬅347(5)—Stock caretaker's negligence in boarding moving train held for jury.**

Where a caretaker in charge of stock had alighted from a freight train at an intermediate station to examine the stock, and was killed while attempting to board the train, which had started without notice, *held*, that deceased

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was not guilty of contributory negligence, as a matter of law, in attempting to board the train when he did; the evidence as to the speed of the train being conflicting.

**6. Carriers** &#8258;295(1)—**Duty of train operatives to keep lookout defined.**

Ordinarily the duty on operatives of trains to keep a lookout does not mean to keep a lookout in the rear or to the rear of the train, but it is their duty to keep a lookout that the track ahead is free from obstruction, and the failure to do so may be negligence.

**7. Trial** &#8258;350(7)—**Failure to submit contributory negligence of caretaker of stock attempting to board moving train held erroneous.**

Where a caretaker in charge of stock alighted from defendant's freight train at an intermediate station to examine the stock, and was killed while attempting to board the train after it had started without notice to him, it was error to refuse definitely to submit affirmatively the issue as to whether deceased was negligent in attempting to catch the train at the time and at the rate of speed it was then going and in the manner in which he undertook to board the train.

**8. Trial** &#8258;350(5) — **Submission of issue of proximate cause unnecessary, where stock caretaker was killed while negligently boarding a moving train.**

Where a caretaker in charge of stock left the train at an intermediate station to examine the stock, and was killed while attempting to board the train after it had started without notice, and there was no controvertible issue of fact that deceased's negligence, if established, was the proximate cause or a concurring proximate cause contributing to the injury, it was not necessary to submit proximate cause as an issue of fact in connection with the issue of negligence in boarding the train.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Action by John Hawley against the Fort Worth & Denver City Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Thompson, Barwise, Wharton & Hiner, of Fort Worth, and Turner & Dooley, of Amarillo, for appellant.

Barrett, Childers & Deatherage, C. B. Reeder, and F. P. Works, all of Amarillo, for appellee.

HUFF, C. J. John Hawley, for himself and for his wife, Mertie Hawley, sued appellant railway company for damages occasioned by the death of R. E. Mathews, alleged to have been caused by the negligence of appellant. R. E. Mathews was the son of Mrs. Mertie Hawley by a former husband and the stepson of John Hawley. At the time of his death, July 24, 1920, he was about 18 years old. On the 23d of July it is alleged that when he received the injuries from which he died he was a passenger on appellant's train, in charge of ten head of horses, being transported in a freight train over appellant's line of road to its connecting carrier (the Santa Fé) at Amarillo, and that the horses were under his care while on the train; that the train stopped at Claude and the deceased got off the train, as it was his duty to do, to look after the horses, and while he was off the train, without any notice to him, the operatives of the train started it suddenly and without giving him time to get aboard; and that the deceased, without realizing or knowing the speed, attempted to board the train, and was thrown under the wheels of the caboose and injured, from which injuries he died the next morning. The petition specifies several grounds of negligence, expressing the same grounds in different language. It may be stated that one of the grounds of negligence relied on was that the appellant started its train at the time it did and under the circumstances it did without giving the deceased notice and without giving him an opportunity to get on the train before it started to move, and that it was the duty of the appellant to have given a signal that it was going to start the train at the time it started it, and a sufficient time before the train started to have given deceased time and opportunity to have gotten thereon in safety to himself, which duty the appellant failed to perform and which was negligence, the proximate cause of his injury. It was also alleged as a ground:

"That said operatives, just before they started said train, and at the time they started said train, knew that said R. E. Mathews would imperil his life in attempting to get on said train, and at the time they started the same knew that he was in peril and discovered said peril and failed to exercise ordinary care to avoid the injury and death of the said R. E. Mathews, and plaintiff says if defendant did not discover the peril of said R. E. Mathews in time to have avoided the same, and did not know that said R. E. Mathews would go into peril, in the exercise of ordinary care the said operatives would have known the same, which care said defendants failed to exercise, the proximate cause of said death and damages."

It is also alleged as a ground of negligence that if the operatives of the train did not know that the deceased was looking after his horses and was not on the train at the time it started, in the exercise of care they would have known that he was not on the train, and that if they attempted to start the same at the time and under the circumstances they did the deceased would undertake to get on same and be injured, which care the operatives failed to exercise, the proximate cause of said injury and death. The defendant an-

swered by general denial and contributory negligence in certain particulars, which will be noticed later on.

A partial statement of facts favorable to appellee and supporting the findings of the jury may be stated to be: That the deceased was acting as shipper of ten head of horses from Salina, Collin county, Tex., to White Deer, in Gray county, Tex.; that the crew of the Fort Worth & Denver City Railway Company, operating the train at the time the deceased received his injuries, picked up the car with the horses and the deceased at Childress and brought them as far as Claude, where the accident occurred. It was a double-header, and had some 66 or 68 cars in the train. The deceased's car of horses was up near the engine, and he was riding in the caboose with the conductor. The caboose was entered from the side instead of at the end of the car. When the train arrived at Claude it stopped at the depot, some of the crew say for the purpose of setting out a car, and it remained there 10 or 15 minutes; some of the testimony would authorize a finding that it was there for a less time than that. After the train stopped, the conductor left the caboose, and he states the deceased was sitting in the door with his feet hanging out, and he asked him to move over and let him out, and that he then proceeded up to the depot to see about some of his waybills. The testimony shows that the deceased got out of the caboose after the conductor left and followed on behind him, going up towards the head of the train, where his horses were, and before he reached the depot the train started out, and that the deceased turned around and was either walking fast or running to catch the caboose, and as it came by took hold of it, but was thrown under the car in front of the rear wheels of the caboose, which ran over him and inflicted injuries from which he died. Various parties testified as to the speed of the train at the time deceased took hold of it, ranging all the way from 10 to 18 or 20 miles an hour. Parties at the depot, at the time of the accident, testify that there was no signal given by whistle or by ringing the bell, or any notice given of any kind that the train was starting. Giving notice was usual and customary on trains of that character. There is some testimony that there was a whistle. The conductor, it seems, instead of going back to the caboose, went forward towards the engine and boarded the train somewhere near the head of the train. He and all the employees testified that they did not see the deceased when he left the caboose or after he left it or at the time he attempted to get on the caboose, except the rear brakeman says that as he got on the train he saw the deceased fall under the caboose and the wheels run over him, and that he then got off and went back and saw he was hurt.

This brakeman was left in the yard at Claude by the train. Another bystander testified that the brakeman never got on the train at all; that he had gotten off and was working at a hot box and had buckets or something in his hand when the train started; and that he knew that he did not get on the train. The court submitted the case on special issues, as follows:

"Special Issue No. 1: Was the deceased, R. E. Mathews, in peril just before and at the time of his injury? Answer: Yes.

"Special Issue No. 2: Would the operatives of the train at Claude, in the exercise of the highest degree of care, have discovered the perilous position of R. E. Mathews, if he was in peril, in time to have avoided his injury and death? Answer: Yes.

"Special Issue No. 3: Was the failure of the operatives of the train to use the highest degree of care, if they did fail to use such care, the proximate cause of the injuries to the deceased, R. E. Mathews, and his death resulting therefrom? Answer: Yes.

"Special Issue No. 4: Did the defendant use the highest degree of care to notify the deceased, R. E. Mathews, by signal, or otherwise, that the train was going to leave Claude in time for said R. E. Mathews to have boarded the train in safety to himself under the circumstances? Answer: No.

"Special Issue No. 5: (a) Was it negligence of the defendants, acting through the operatives of said train, in failing to notify the deceased, R. E. Mathews, if they did fail so to do, that the train was going to start as it did, in time for the deceased, under the circumstances, to have boarded the train in safety to himself? Answer: Yes. (b) If so, was such negligence, if any, the proximate cause of the injury and death of the said R. E. Mathews? Answer: Yes."

The appellant, under several assignments, assails the action of the court in failing to give a specially requested charge, instructing a verdict in its favor. Under these assignments it is asserted, by proposition and argument, that under the evidence there was no issue of discovered peril, and that, the facts being conclusive that the railroad operatives did not know that the deceased had left the caboose, or that he intended to do so, there was no duty resting on appellant to give notice of the departure of the train, and that therefore there could be no negligence on its part in the failure to give such notice, and the court should have so instructed the jury. They also assert, under an assignment, that the testimony conclusively establishes that the deceased himself was guilty of contributory negligence in attempting to board the train at the rate of speed it was then traveling, and that his negligence was contributory negligence, proximately causing his injury and death.

[1] We agree with appellant that the facts in this case do not present discovered peril, and a recovery on that ground, in our judg-

ment, would not be warranted. We are not inclined, however, to interpret the issues submitted in the first, second, and third special issues as submitting the question of discovered peril. It is not clear to us just what issue the court was endeavoring to submit by those issues, but it would seem that he sought to submit the duty resting upon carriers to keep a lookout for persons on its right of way, or in places that would endanger their safety. We think that special issues Nos. 4 and 5 and the subdivisions thereof submit the question of duty resting on the carrier to notify the deceased, by signal or otherwise, that the train was going to leave Claude and the issue whether it did so in time for the deceased to have boarded the train in safety to himself. This issue we think the evidence fairly presents, and it would have been error, in our judgment, to have withdrawn that issue from the consideration of the jury. This case, we think, must be determined on the duty a carrier owes to a passenger as such while under the charge of the carrier and whether the carrier has exercised that high degree of care imposed on it towards the deceased while a passenger on its train.

[2] A carrier who accepts a passenger on its freight train is charged with the same degree of care as upon a regular passenger train, but a passenger on a freight train will be considered as having accepted passage with the knowledge that he will not receive the same service as on a passenger train, and that he will be subjected to the usual and ordinary handling and service by very competent and prudent persons on such trains, and that he assents to the inconveniences incident to such mode of traveling. Herring v. Railway Co., 108 S. W. 977; Railway Co. v. Patillo, 45 Tex. Civ. App. 572, 101 S. W. 492; Mullen v. Railway Co., 92 S. W. 1000; Lewis v. Railway Co., 124 S. W. 1006; Railway Co. v. Wilson, 136 S. W. 565.

It is held that a passenger may alight at an intermediate station for a proper purpose.

"Again, it has been held that, when a train stops at a passenger depot, there is an implied invitation to alight, and in starting the train again every reasonable precaution should be taken to prevent injury to any passenger who should alight, while getting off or back on the train, such as giving warning of the starting of the train by customary signals." Railway Co. v. Cooper, 2 Tex. Civ. App. 50, 20 S. W. 993; Railway Co. v. Overfield, 19 Tex. Civ. App. 440, 47 S. W. 684; Railway Co. v. Price, 48 Tex. Civ. App. 210, 106 S. W. 700; Dodge v. Boston & Bangor S. S. Co., 148 Mass. 207, 19 N. E. 373, 2 L. R. A. 83, 12 Am. St. Rep. 541.

One who temporarily leaves a train does not lose the character of a passenger.

"Under these facts the plaintiff, by leaving the train under the circumstances, did not terminate his relation as passenger of defendant's train. This being so, it was the duty of the company to give a reasonable time for passengers to board the train after giving the signal to start, and to use the utmost care in operating its train to prevent injury to its passengers attempting to board same.' Railway Co. v. Gray, 71 S. W. 316, and authorities cited therein.

Also Mills v. Railway Co., 94 Tex. 242, 59 S. W. 875, 55 L. R. A. 497.

[3] A passenger may remain such in getting off at an intermediate station, so long as his object in doing so is not inconsistent with his character as a passenger. Such right does not depend upon notice having been given to the conductor that he desired to alight, but that it is an absolute right enjoyed by a passenger. Railway Co. v. Mathews, 32 Tex. Civ. App. 137, 73 S. W. 413, 74 S. W. 803; Railway Co. v. Goldman, 51 S. W. 275; Railway Co. v. Mayfield, 56 S. W. 942.

[4] We do not think we will be justified in holding, as a matter of law, because the conductor or other operatives did not have notice that deceased intended to leave the train or had done so, that they were not guilty of negligence in starting the train in the manner they did. The evidence shows the deceased was rightfully on the train in charge of a car of horses, which he had not, previous to that time, since leaving Childress, had an opportunity to examine, and the evidence indicates that deceased did leave the caboose for that purpose. Apparently the evidence shows there was nothing to prevent the conductor and other operatives from seeing deceased after he alighted from the caboose while going down the track towards his horses. As we understand the law, the operatives then owed to deceased at least the customary or ordinary duty of giving signals or notice before the departure and time sufficient after such notice to board the train.

[5] On the question of contributory negligence we do not believe we should hold, as a matter of law, that the deceased was guilty thereof in trying to board the train at the time he did. The opinions of the various witnesses differ as to the speed of the train. It had moved but a short distance, perhaps not exceeding half the length of the train, at the time he sought to board it. The deceased was thrown, or fell, under the train about the time the brakeman says he boarded the train, and the brakeman, after he fell, alighted from the train. Under all the circumstances of the case we are inclined to think that contributory negligence was a question for the jury.

The appellant presents assignments that the court erred in refusing to give a new trial because the evidence is insufficient to support the findings of the jury on the points above given by us. For the reasons given, we overrule these assignments.

Appellant also presents assignments on the objections urged to the court's charge in the issues submitted, 1, 2, and 3, on the ground that they submitted discovered peril when there was no evidence supporting that issue. As above suggested, we agree with appellant that there was no evidence supporting that issue, but we are not inclined to interpret the charge as presenting that issue, rather presenting the issue whether or not the appellant was negligent in failing to keep a proper lookout and to discover the position of deceased just before his injury.

[6] Ordinarily, the duty upon operatives of trains to keep a lookout does not mean, as we understand the law, to keep a lookout in the rear or to the rear of the train, but it is their duty to keep a lookout to see that the track ahead of them is free from obstruction, and a failure to do so may be negligence. We hardly think the issue of negligence in failing to keep a proper lookout, as ordinarily applied applicable to this case. It seems to us the case of Railway Co. v. Moss, 180 S. W. 1128, may be applicable and illustrative of the rule governing an issue of that character. However, the fact that the court submitted that issue and the jury found in favor of the appellees on that issue would not necessarily reverse the case, for the reason that they found that appellant was negligent in the failure of performing its duty to the deceased as a passenger on its train, in failing to give him a signal or notice and time in which to board the train. This case, as above suggested, we think must be disposed of under the law regulating the duty of a carrier towards a passenger. We believe what has been said will dispose of the assignments from 1 to 11, and, without discussing the matter further, we overrule those assignments.

The twelfth and thirteenth assignments assert error in submitting special issue No. 6, given by the court, which is:

"Was the said R. E. Mathews, just before or at the time of his injury, guilty of negligence, the proximate cause of his injury and death?"

The jury answered, "No." The appellant objected to the submission of this issue in proper time in the court below, because (1) it was too restricted, in that the inquiry is confined to whether deceased's negligence was the proximate cause and ignores whether the negligence might have been the contributing cause; (2) it should have submitted specifically and affirmatively whether deceased was guilty of negligence in attempting to catch the train at the time in question, at the rate of speed it was then going, and the manner and way in which he undertook to take hold of the train, etc.; that it does not submit the specific issue of contributory negligence as pleaded by the appellant.

The fourteenth assignment presents error in refusing requested issue, as follows:

"Would a person, in the exercise of ordinary care, as that term is defined in paragraph 1, subdivision 4 thereof, of the court's main charge, for his own safety, have attempted to board the train at the time and place the deceased, R. E. Mathews, attempted to board the train, moving at the rate of speed that the train was at said time? Answer 'Yes' or 'No.'"

The appellant pleaded specifically in defense that the deceased attempted to board the train when it was moving at too rapid a rate of speed to do so in safety; that he knew thereof, and that this act was negligence and the proximate cause of his injury and death, and that he was guilty of contributory negligence in attempting to board the train at the speed it was then running; that he was warned that it was running too fast just before he attempted to board the car; that the train started slow, and there were ladders attached to cars by which he could have regained the train; but that he waited for the caboose, when the speed was increased to a rapid rate, in which he was negligent and which contributed directly and proximately to the injury. The facts raise the issue of contributory negligence, in that the train was moving at a speed which at the time was unsafe to attempt to board.

[7] The appellant was entitled to have the facts constituting its defense submitted concretely and affirmatively, and a failure to do so upon objections to the charge on that ground, and a failure to give a requested issue submitting the defense, was error. This court has many times so held, and in doing so we have followed the holdings of other courts and the Supreme Court. We have not held that it is unnecessary to submit the group of facts relied upon as an affirmative defense, as contended by counsel in this case. The same objection practically was made to the special issue given on contributory negligence in the Francis Case, and Judge Hall, for this court, held the objection well taken, and in that case the railroad sought to have its defense affirmatively presented, as in this case, and it was there said:

"Appellant had the right to have these facts affirmatively presented to the jury for their finding. G., C. & S. F. Ry. Co. v. Mangham, 95 Tex. 413, 67 S. W. 765." Railway Co. v. Francis, 227 S. W. 342.

See Dallas Hotel Co. v. Fox, 196 S. W. 647; Philpott v. Edge, 224 S. W. 263; Railway Co. v. Morrow, 235 S. W. 664, this day handed down.

It would seem the objections to the issue as submitted by the court would be sufficient to present the error of the court in submitting the defense in such general terms, but it is insisted by the appellee that the issue as

requested by appellant was defective because the issue ignored the proximate cause. In other words, we suppose appellee insists that the jury, in addition to finding the acts which it was sought to have submitted as constituting negligence on the part of the deceased, should find same was the proximate cause of his injury. It will be perceived appellant, in the issue requested, asked if a person "in the exercise of ordinary care, as that term is defined in paragraph 1, subdivision 4 thereof, of the court's main charge." In subdivision 4 the court defined ordinary care, and states the failure to use ordinary care is negligence, "as that term is applied in paragraph 3 above." Paragraph 3 is:

"At the time the said R. E. Mathews was injured it was his duty to exercise ordinary care for his own safety, and if he failed to use such care, and if as a proximate result thereof he was injured and killed, as alleged by plaintiff, then he was guilty of negligence."

In the issue which appellant sought to have submitted the general charge of the court was referred to, and it would seem these charges were thereby made part of the requested issue or explanation thereof, as required by the statute, and in that charge the court, in effect, told the jury the failure to use ordinary care would be negligence if such failure did produce the injury. In that way the court did require the jury to find, if they found negligence on the part of the deceased, that it must have proximately caused the injury.

[8] But, in addition, if the deceased was negligent in attempting to board the train, there was no controvertible issue of fact but that such negligence, if established, was the proximate cause, or a concurring proximate cause, contributing to the injury. It was not therefore necessary to submit proximate cause as an issue of fact in connection with the issue of negligence in boarding the train. In the nature of things, if the deceased had not attempted to board the train he would not have been injured. The sole question, therefore, was one of negligence. Railway Co. v. Rowland, 90 Tex. 365, 38 S. W. 756; Ry. Co. v. Wall, 102 Tex. 362, 116 S. W. 1140. The assignments above reviewed will be sustained for the reasons stated by us.

The fifteenth and sixteenth assignments will be overruled. We are of the opinion the issues requested only sought a finding on evidentiary facts. If the deceased was negligent in attempting to board the train while running at a great speed or a dangerous speed, such attempt would be the proximate cause of the injury. He had a right to get on the train when he tried to do so, if an ordinarily prudent person would then have done so. In getting off the car deceased was not negligent, if he had the legal right to do so as a passenger, whether he notified the

conductor or not. The fact that he was warned that the train was moving too fast to board was evidentiary in establishing the ultimate fact of negligence in attempting to do so. A finding thereon would not have settled the issue to be established, that is, Was the deceased negligent in attempting to board the train when he did?

The seventeenth assignment will not be discussed, as the case will be reversed.

The judgment of the court below will be reversed, and the cause remanded.